[No. B145636. Second Dist., Div. Six. Apr. 26, 2001.]

In re the Marriage of CHRISTOPHER BRETT and JAMIA SUE WILLIAMS.
JAMIA SUE WILLIAMS, Respondent, v.
CHRISTOPHER BRETT WILLIAMS, Appellant.

**COUNSEL**

Ricks & Associates and Gary R. Ricks for Appellant.

Matthew J. Long for Respondent.

**OPINION**

**YEGAN, J.**—In this family law move-away case, the court permitted two of four children to move away. As we shall explain, a family law court may enter an order which has the effect of separating siblings only when compelling circumstances dictate that such separation is in the children's best interest.

Christopher Brett Williams (Father) and Jamia Sue Williams (Mother) dissolved their marriage and agreed to a joint custody arrangement for their four minor children, ranging in age from 10 to 3 years. Mother remarried and moved from Santa Barbara to Utah. She requested that the parties' joint child custody agreement be modified so the children could live in Utah with her. Father objected. The family law court ordered that the eldest and

youngest children could move to Utah with Mother, while the middle children were to remain in Santa Barbara with Father. Father contends the family law court abused its discretion because it separated siblings from each other. We conclude that the family law court abused its discretion because the record does not show compelling circumstances warranting the separation of the siblings. Accordingly, we reverse.[1]

*Facts*

The parties have four children: sons Scott (born September 1990) and Brett (May 1996), and daughters Taylor (June 1992) and Jordan (October 1997). Mother worked outside the home until about February 1996, when she was pregnant with Brett. Thereafter, she was a "stay-at-home mom" until July 1999 when she returned to full-time employment.

Mother and Father separated in June 1999, but continued to share the family house until October, when Father moved into a condominium. Between October 1999 and April or May 2000, the children spent alternate weeks with each parent. The parties hired a nanny who lived in Mother's house and watched the children there on weekdays, regardless of where they were sleeping. In May 2000, the nanny moved into Father's house and continued to care for the children while they stayed with him.

Mother remarried in May 2000 and moved to Utah where her new husband resides. She filed a motion to modify custody and sought the family court's permission to take all the children to Utah. Mother testified that she thought moving to Utah was in the children's best interests because lower housing costs would allow her to work one-half or three-quarter time, leaving her more time to spend with them.

Mother testified that she has a strong bond with her children and that they are her number one priority. The children had met her new husband about five times and they appeared to get along well. Mother opined that the children were not Father's first priority because he works long hours. She believed that Father worked fewer hours during the weeks he did not have custody of the children because he preferred to spend that time with his girlfriend. Mother believed Father was too impatient with their oldest child, Scott, and that he did not pay enough attention to Taylor's softball games and school activities. She also thought Father had a hard time telling the

---

[1] Both parents are displeased with the family law court's order. Father says the decision was "intemperate" and that splitting the "family in two halves should not be tolerated." Mother says "the trial court lost its way and made a decision that could not reasonably be seen as being in the best interests of these four children."

children "no," and often undermined Mother's authority by contradicting her rules.

Father testified that the children are his first priority. He believed the alternate weeks arrangement worked well and opposed the children moving to Utah. Father testified the children had been staying with him virtually full time during May 2000 because Mother was busy with her move to Utah. Although he works long hours, Father testified, he is available whenever the children need him. He often has lunch with the children at their school or has them visit him at his workplace. Father acknowledged that the children love their mother and want to be with her, but he believed they should stay in Santa Barbara because they had always lived there and because they had a large extended family in the area. For example, the oldest child Scott played on a youth football team that was coached by Mother's father. Taylor had taken ballet and played soccer and softball. Scott and Taylor also had ties to their school and church. The children did well in their school and were well adjusted socially. Father opined that frequent travel to Utah would harm the children and that Mother should visit them in Santa Barbara.

### Family Law Court Ruling

The family law court ordered that the oldest child and the youngest child reside with Mother in Utah but that the two middle children remain in Santa Barbara with Father. It said: "Normally, the court would not consider separating the four siblings, since the court weighs the continuity, stability and bonding of these relationships very heavily. However, on the facts of this particular case, the court finds that the best interests of the children are served by a separation. The criteria set forth in the leading cases and which the court has considered are evenly balanced in this case and the court is convinced that either parent would be an appropriate custodial parent. However, in considering the nature and amount of contact with both parents the court finds that there is evidence that the oldest child has a stronger relationship with his mother and that his best interests are served by her being the custodial parent in his case. In considering the age of the children, the court finds that the youngest child is of such tender years that her best interests are served by her mother being the custodial parent in her case. As to the two middle children, the factors of the established patterns of care and emotional bonds outweigh other considerations and the court finds that their best interests are served by their father being the custodial parent in each case."[2]

---

[2]This excerpt from the family law court's written order is largely conclusional. It is silent on the adverse result which we assume will be occasioned by the separation of siblings.

## Contentions on Appeal

■ Father contends the family law court abused its discretion when it awarded primary custody of Scott and Jordan to Mother because it improperly considered Mother's financial ability to stay at home with the children and failed to give appropriate weight to the children's ties to Santa Barbara. Alternatively, Father contends that the court should have appointed an investigator to obtain more information about the children's living situation in Utah. Although she has not appealed, Mother contends the family law court properly decided that Scott and Jordan should move to Utah because the evidence demonstrated that they are closely bonded to her. She claims, however, that the family law court abused its discretion with respect to Taylor and Brett because there is no basis for distinguishing between them and their siblings.

## Standard of Review

■ "The standard of appellate review of custody and visitation orders is the deferential abuse of discretion test. [Citation.] The precise measure is whether the family law court could have reasonably concluded that the order in question advanced the 'best interest' of the child." (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 [51 Cal.Rptr.2d 444, 913 P.2d 473].) Where, as here, the parties have a working joint legal and joint physical custody agreement, and one parent seeks to relocate with them, the family law court "must determine de novo what arrangement for primary custody is in the best interest of the minor children." (*Id.* at p. 40, fn. 12; see also *Brody v. Kroll* (1996) 45 Cal.App.4th 1732, 1736 [53 Cal.Rptr.2d 280].)

## Sibling Separation

■ The family law court found that the parties had a working joint custody arrangement that would be disrupted by Mother's move to Utah. (*In re Marriage of Burgess, supra,* 13 Cal.4th at p. 40, fn. 12.) Mother supplied good faith rational reasons for her desire to move with the children. (See, e.g., *In re Marriage of Edlund* (1998) 66 Cal.App.4th 1454, 1469-1470 [78 Cal.Rptr.2d 671]; *In re Marriage of Biallas* (1998) 65 Cal.App.4th 755, 763 [76 Cal.Rptr.2d 717].) It was therefore necessary for the family law court to determine de novo the custody arrangement that would be in the best interests of the children. (*In re Marriage of Burgess, supra,* 13 Cal.4th at p. 40, fn. 12; see also *In re Marriage of Whealon* (1997) 53 Cal.App.4th 132, 137 [61 Cal.Rptr.2d 559].) Family Code section 3011 provides that, in determining the best interests of the children, the family law court must consider their health, safety and welfare, any history of abuse by either

parent, the nature and amount of the children's contact with each parent, and any substance abuse by either parent.

The family law court found that there was no history of abuse and that the remaining factors "are evenly balanced" between the parties, either of whom would be an appropriate custodial parent. We agree. Both parents are bonded with the children, have demonstrated that they care for the children appropriately, and both have the desire and the ability to serve as the primary custodial parent. Similarly, the children appear to function well in the care of each parent. Had the family law court allowed all of the children to either reside in Santa Barbara or move to Utah, we could easily affirm on the deferential standard of appellate review. (See, e.g., *Estate of Gilkison* (1998) 65 Cal.App.4th 1443, 1448-1449 [77 Cal.Rptr.2d 463].)

We cannot do so here. The family law court has ordered a custody arrangement so unusual and onerous to all concerned that it cannot be considered a routine exercise of judicial discretion. It has quite literally "split the babies," requiring two siblings to remain in Santa Barbara with Father while ordering that the other two move to Utah with Mother. The record is silent on the adverse effect the order will necessarily have from the point of view of the children. They too have rights, which must be considered.

Neither parent testified concerning the relationships among the children, focusing instead on their own relationships with the children. The record contains no psychological evaluations, no school or medical records and no input from the children. There is no evidence concerning the extent to which the siblings are bonded to one another or the extent to which their separation would hinder or serve their best interests.[3]

The present record does, however, contain ample support for the family law court's conclusions that either parent would be an appropriate custodial parent. The order treats these loving and capable parents equally, rewarding each one with primary custody of two children. We appreciate the family law court's dilemma. A custody decision is one of the most serious decisions a family court judge is required to make. Move-away cases are particularly troublesome because, in most situations, they start with a parent's election to move. Nevertheless, absent agreement, the family law court must make a decision. Here, the family law court may have avoided the difficult task of deciding which capable parent would raise all of the children. The order may come at too high a price because it separates each child from one parent and

---

[3]Family Code section 3110 et seq., provides a procedure for obtaining a custody investigation and report which could address the impact of sibling separation.

from two siblings. In its zeal to reward good parents, the family law court may have punished good children.

Children are not community property to be divided equally for the benefit of their parents. The parents of these children have chosen to divorce each other. The children have not chosen to divorce each other. At a minimum, the children have a right to the society and companionship of their siblings. (See, e.g., Welf. & Inst. Code § 16002, subd. (a) [declaring the public policy of this state that siblings be placed in foster care together "to maintain the continuity of the family unit and ensure the preservation and strengthening of the child's family ties . . . ."].) We can envision a case in which an extraordinary emotional, medical or educational need, or some other compelling circumstance, would allow the separation of siblings. But here there is no evidence of the impact that separation will have on these children. In the absence of such evidence, we cannot affirm the family law court's order even on the deferential abuse of discretion standard.

No published California opinion has sanctioned a custody order which, in essence, divorces children from each other. Other states have spoken to this issue. Many states afford strong protection to sibling relationships. (See Annot., Child Custody: Separating Children by Custody Awards to Different Parents—Post 1975 Cases (1989) 67 A.L.R.4th 354.) Florida, for example, acknowledges that "there is often a bond of interdependence among siblings which, if left intact, can serve as a source of mutual support and can help to lessen the trauma of divorce." (*Brown v. Brown* (Fla.Dist.Ct.App. 1982) 409 So.2d 1133, 1134.) In recognition of that bond, Florida courts have consistently held that, "the separation of siblings is disfavored and should be done only under the most compelling circumstances." (*Bache v. Bashir* (Fla.Dist.Ct.App. 1986) 482 So.2d 546, 548.) "[C]hildren in a family should not be separated from each other and distributed about in different homes, except for the most compelling cause. For while brothers and sisters may not have a legal right to remain together, to share each others lives, and to grow up together, certainly they have a natural right to do so. Justice requires that society exercise its moral duty to insure that children in a family enjoy this right until such time as absolute necessity and the welfare of the children, itself, requires their separation." (*Arons v. Arons* (Fla. 1957) 94 So.2d 849, 853.)

The rule and rationale of Florida jurisprudence are rooted in common sense. They provide a practical and workable rule to guide family law courts considering sibling separation orders in California. The present record discloses no compelling circumstances to justify the separation of these siblings. On remand, the family law court may only order a separation of

siblings upon a showing of compelling circumstances. If it does, it must articulate such circumstances in a manner that permits meaningful appellate review. (Fam. Code, § 3087.) We express no opinion on how the family law court should rule on remand.

The custody order is reversed. The matter is remanded for reconsideration in light of the new rule we have announced. Each party shall bear his or her own attorney fees and costs on appeal.

Gilbert, P. J., and Coffee, J., concurred.