[No. B171500. Second Dist., Div. Seven. Sept. 15, 2004.]

In re Marriage of MONICA M. and RUSSELL D. HEATH.
MONICA M. HEATH, Appellant, v.
RUSSELL D. HEATH, Respondent.

## Counsel

Western Law Center for Disability Rights, Paula D. Pearlman, Carolyn R. Young; Proskauer Rose, Arthur F. Silbergeld and Jamaar M. Boyd for Appellant.

Russell D. Heath, in pro. per., for Respondent.

## Opinion

**ZELON, J.—** ▮ In the biblical story of King Solomon, two women, each claiming to be the mother of a baby, asked for a decision. King Solomon threatened to split the child in half, ending its life but allowing each woman to have a piece of the child. The true parent revealed herself by saying no, placing the best interests of her child ahead of her own desire to raise the child. Although the children's lawyer described the situation in this case as Solomonic, the court did what King Solomon never intended to do: he

split the family and ended the life together of two young brothers. That the court did so on a record devoid of any evidence that the result was in the best interests of either child requires reversal.

## FACTUAL AND PROCEDURAL BACKGROUND

Monica and Russell Heath were married in 1995. Their children Michael and Samuel were born in 1998 and 2000. In 2001, the parents separated; minor's counsel was appointed jointly for both children in January 2002. The children remained with mother, and stipulated temporary orders concerning custody confirmed primary physical custody of both children to her, with visitation for father, in 2002.

After mother changed her county of residence, father petitioned for sole legal and physical custody of the children. On July 1, 2003, when the matter came on for trial, counsel for the children advised the court that parents had stipulated that the children should not be separated. Counsel further advised the court that both children had been tested, and that Michael had autism; while Samuel displayed what was characterized as "autistic-like" behavior, he required only a referral for speech therapy.[1]

Both parents testified at the trial concerning the disputes between them, and, more importantly, the educational opportunities available in their home school districts. Mother introduced the specialized educational plan that had been prepared for Michael. No other evaluations of either child were introduced, nor was any expert testimony presented concerning the needs of the children or their relationship to each other. The court's analysis, after testimony and argument, focused on the need for stability. Finding that mother had been the primary caretaker, and that there was no evidence to suggest that she was not a competent parent, the court concluded that "it might be too disruptive at this point to make a move," continued the prior orders in full force and effect, and ordered the matter brought back for review at the end of the summer.

On August 4, new temporary visitation orders were made, pending the review hearing on September 3, 2003. At that time, father argued that he believed the children should be separated, because, in his opinion, Michael was holding back Samuel's development. The court responded "It's called modeling behavior. . . . Which we talked about before, and I had kind of a hunch that maybe that was going on." Mother's counsel asserted that there

---

[1] This is the first reference in the record to the mimicking behavior that the court later relied on for its decision. Counsel stated, referring to Samuel, "He has been tested and the belief, as I understand it, is now that the parties at least understand that he may mimic some of the behavior of Mikey. . . ."

had been no changes in Samuel's behavior consistent with father's description. No testimony or other evidence was presented by either party; neither the parties nor children's counsel presented any argument concerning the nature of the sibling bond or the need to evaluate that factor.

The court nonetheless concluded that he had "an image of what's going on out there which I think is really happening. And that is with this autistic kid[,] the moves that are occurring[,] the problems that that raises for the child, the instability of the situation, the behaviors that are difficult even in a stable home to deal with, means that that child needs a lot of attention. And I think that he's getting a lot of attention. [¶] And when he gets the attention, the younger child says, 'What about me? Maybe if I mimic the behaviors, then I'll get that attention as well.' So it is a situation that I'm coming to the conclusion that these children would be better served if they were not together under the circumstances. [¶] I just don't think there's a compelling reason, notwithstanding the Williams case, that the decisions that are made in this Court necessarily are made simply on the premise that the children need to be together. We've got some unusual dynamics going on here."[2]

Following this statement by the court, mother's counsel argued that separation would be detrimental to the children. Again, no testimony or other evidence was presented; father merely expressed his disagreement. The court awarded custody of Samuel to father and custody of Michael to mother, and established a visitation schedule. Judgment was filed on October 16, 2003. This timely appeal followed.

*Standard of Review*

■ Review of a custody decision by this court employs an abuse of discretion standard. The issue is whether the family law court could reasonably have concluded that the order advanced the best interests of the children. (*In re Marriage of Williams* (2001) 88 Cal.App.4th 808, 812 [105 Cal.Rptr.2d 923] (*Williams*).)

■ That decision requires consideration of the importance of stability and continuity in the life of a child, and the potential harm of disrupting bonds established when one parent has been the primary caretaker from birth. To disrupt that relationship requires a showing that overcomes the fact that a child has thrived with a caretaker; where, as here, no serious deficiency in care has been identified, the best interests of the child require justification for

---

[2] Children's counsel acknowledged her view that the interests of the children diverged. See part II, *post*.

a change. (*Burchard v. Garay* (1986) 42 Cal.3d 531, 541 [229 Cal.Rptr. 800, 724 P.2d 486].)[3]

## DISCUSSION

### I. *Ordering Separation of the Siblings Was an Abuse of Discretion*

Two strong policies in California law are implicated by this decision: first that the sibling bond should be preserved whenever possible; and second, that disability, mental or physical, is never to be presumed as a barrier to individual rights. The decision below ignores both of these guiding principles.

#### A. *The Sibling Relationship Deserves Strong Protection*

"Children are not community property to be divided equally for the benefit of their parents. . . . The children have not chosen to divorce each other. At a minimum, the children have a right to the society and companionship of their siblings." (*Williams, supra*, 88 Cal.App.4th at p. 814.)

In *Williams*, the family law court had divided four siblings, awarding custody of two to the mother, and two to the father. Prior to the order, the family had a successful joint custody arrangement, but mother had remarried and was moving to Utah. The family law court properly found that both parents would be appropriate custodial parents, but ordered the split in a decision described as "so unusual and onerous to all concerned that it cannot be considered a routine exercise of judicial discretion." (*Williams, supra*, 88 Cal.App.4th at p. 813.) The record was silent as to any adverse effect on the children's needs, containing no testimony concerning the relationship between the children, no psychological evaluations, school records, or input from the children, and no evidence as to the impact of the separation on their best interests. In light of all the facts, and the failure to document the critical considerations, the court found that the family law order ignored the public policy of this state, as demonstrated by Welfare and Institutions Code sections 16002 and 366.26, subdivision (e), and was an abuse of discretion.

"We can envision a case in which an extraordinary emotional, medical or educational need, or some other compelling circumstance, would allow the separation of siblings. But here there is no evidence of the impact that separation will have on these children. In the absence of such evidence, we

---

[3] Given that the ruling changed an existing custody arrangement, father could appropriately have been held to the burden of showing a substantial change of circumstances making modification essential to the child's welfare. (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 37 [51 Cal.Rptr.2d 444, 913 P.2d 473].) Even under the lower showing allowed by the family law court, however, the decision here cannot stand.

cannot affirm the family law court's order even on the deferential abuse of discretion standard." (*Willliams, supra,* 88 Cal.App.4th at p. 814).

■ The family court here similarly failed to recognize either the interest of the children in having a meaningful opportunity to share each other's lives, or the potential detriment of their separation. Here, as in *Williams,* both parents were appropriate custodial parents. Here, as in *Williams,* the record was silent as to the relationship between the children, the true impact, if any, of Michael's autism on Samuel, and the impact on Michael of losing Samuel. No testimony was taken, no custody evaluation was ordered (Fam. Code, section 3110; Cal. Rules of Court, rule 5.220), no expert analysis was undertaken. Instead, the court relied on speculation by the father and children's counsel, and the court's "hunch." The law, however, requires proof of compelling circumstances, based on evidence that the family law court can evaluate and this court can review. (*Williams, supra,* 88 Cal.App.4th at p. 814.) Speculation by lawyers, conflicting argument on behalf of parents, and "hunches" of judges do not suffice. Even on the deferential abuse of discretion standard, this order cannot be affirmed.[4]

### B. *A Court Cannot Presume Detriment from Disability*

■ Just as it is the policy of this state that siblings should be allowed to grow up together, it is the policy of this state that the existence of a disability does not permit a court to presume detriment. Rather than relying on stereotypes, assumptions, and "hunches" to make a determination concerning the best interests of a child, the court must make an appraisal of the actual circumstances of the person alleged to be disabled.

The Supreme Court has addressed this issue in the context of a parent's right to custody of his child in the face of a disabling injury to the parent. Rather than assume harm to a child based on the mental or physical disability of the parent, the court required an analysis of the true impact the disability was likely to have, based on expert testimony on the actual nature of the parent's condition. (*In re Marriage of Carney* (1979) 24 Cal.3d 725 [157 Cal.Rptr. 383, 598 P.2d 36].) "The court should examine each factual situation to determine what type of detriment might result and not impose its set of values as to what constitutes a 'good home environment' on a family who may not subscribe to those same values." (*In re Jamie M.* (1982) 134 Cal.App.3d 530, 541 [184 Cal.Rptr. 778].) There is no reason to apply a less detailed analysis in determining the best interests of children.

---

[4] While not relevant to our decision on this appeal, the court notes father's motion to end visitation for up to one year, which, if granted, would result in a complete break between the children. On remand, the trial court should consider the impact of father's objection to a continuing relationship between the siblings.

██ Recognizing the difficult problem constantly faced by a court required to determine the best interests of the child in the face of imperfect and unsatisfactory alternatives, it remains unacceptable for a court to make that determination based on an assumption. Just as in cases where the bond between parent and child cannot be severed merely because the parent has a disability, so too the bond between siblings should not be severed without a careful analysis of the actual impact of one child's condition on the other child, as well as the impact of separation on both children.

The result of such an assumption is clear in this case: the children have been ordered to live apart. Whether there is anything to be gained by that order for Samuel is not clear; whether both children will be injured by the order is also unexamined. Autism is a complex condition, about which much is not known. It may manifest in different ways in different children, and there is a range of behaviors and abilities within the diagnosis. (See, e.g., appellant's exhibit D to request for new evidence on appeal, autism, the facts, ch. 1.) So too is there a range with respect to the relationships between autistic children and their siblings; while there have been limited studies published on sibling interactions, those completed have found that there can be positive impacts on the non-affected sibling from living with the autistic child. (See appellant's exhibit A to request for new evidence on appeal, sibling relationships of children with autism; and exhibit B to request for new evidence on appeal, living with impairment, the effects on children of having an autistic sibling.) These studies have also noted that it is not clear what the relationship between developmental delays in the sibling may be: the stress of living with the affected child; the degree of disability; or genetic factors. (appellant's exhibit B to request for new evidence on appeal, *supra*, living with impairment: the effects on children of having an autistic sibling.)

Many of these issues are implicated in this case and must be examined by the court in the light of evidence about the needs, abilities, and interactions of each child. Simple assumptions about a complex process cannot substitute for real analysis. Simple assumptions do not answer the questions about the cause of Samuel's delays, or the approach to addressing them, nor do they answer the question that remained unasked throughout these proceedings: What are the effects on Michael of separation from Samuel, now or later when he may be able to understand that it was his condition that made it necessary for the children to live apart? This Court cannot answer these questions; they must be answered using a fully developed record.[5]

---

[5] The required complexity of the analysis returns us to King Solomon: "Solomon's own reputation as a man of justice is probably overrated. His resolution of the famed maternity dispute rests on the presumption that the baby's biological mother would be concerned about the life of the baby while the other woman would readily consent to its slaughter. Does this really make sense? As the story goes, the false mother was so grieved by the loss of her own

## II. *Separate Counsel Must Be Appointed for Each Child*

During all proceedings in this matter, both children were represented jointly by appointed counsel. Mother now asserts that separate counsel was required, in light of the divergent interests of the children. We need not decide whether it was error not to appoint separate counsel earlier, in light of the issues we have already discussed. However, on remand, the court must appoint separate counsel for each child. (*In re Celine R.* (2003) 31 Cal.4th 45, 58 [1 Cal.Rptr.3d 432, 71 P.3d 787] [separate counsel should be appointed where there is actual conflict or a reasonable likelihood of actual conflict between the siblings].) Where siblings would not be kept together, there is such a potential conflict. (*Ibid.,* citing *Carroll v. Superior Court* (2002) 101 Cal.App.4th 1423, 1430–1431 [124 Cal.Rptr.2d 891].) Here, that potential conflict has ripened into actual conflict, and separate counsel is required.

## DISPOSITION

The portion of the October 16, 2003 judgment pertaining to custody is reversed and the case remanded for further proceeding consistent with this opinion. Appellant is to recover her costs on appeal.

Perluss, P. J., and Woods, J., concurred.

---

baby that she stole that of another. (1 Kings 3:16–28.) Would a woman in that situation countenance with indifference the killing of the very infant she had stolen to assuage her grief? In lieu of engaging in careful fact finding, Solomon may simply have handed the baby over to the woman who was clever enough to see through his bluff. [¶] All of which is to say that Solomonic solutions may satisfy the Solomon in each of us, but do not necessarily reach the correct result. If Solomon's experience teaches anything, it is that courts must be extremely wary of adopting rules of law that satisfy the court's sense of justice but fail to take into account the realities of the dispute before them." (*U.S. for Use and Benefit of Balzer Pacific Equipment Co. v. Fidelity & Deposit Co. of Maryland* (9th Cir. 1990) 895 F.2d 546, 555, fn. 5 (dis. opn. of Kozinski, J.).)