Filed 6/2/15  Marriage of Erikson CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Marriage of KAREN LIEBSCHER ERIKSON and ROLF FORDE ERIKSON. | 2d Civil No. B255411 (Super. Ct. No. FL031235) (San Luis Obispo County) |
| KAREN LIEBSCHER ERIKSON,<br><br>    Appellant,<br><br>v.<br><br>ROLF FORDE ERIKSON,<br><br>    Respondent. | |

Karen Liebscher Erikson appeals an order terminating the appointment of her children's therapist, Suzanne Cholet, and appointing a replacement therapist.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Karen and Rolf were married briefly in 2003.[1]  Karen obtained a domestic violence restraining order against Rolf before she gave birth to their son and daughter, twins, in 2004.

---

[1] We shall refer to Karen Liebscher Erikson and Rolf Forde Erikson by their first names not from disrespect, but to ease the reader's task.

In 2006, the trial court awarded sole physical and legal custody to Karen, based partly on Rolf's criminal history, alcohol and drug dependency, and explosive behavior during visits with the twins. It ordered supervised visitation for Rolf.

The paternal grandmother, Doreen Webb, intervened and sought visitation. The trial court denied her request because she was unable to control her undermining behavior toward Karen. By 2011, the trial court record consisted of 18 volumes in this "highly contested" case.

The record on appeal includes only a fraction of these documents. It omits a number of findings and orders that may have guided our review of the trial court's decision to substitute therapists.

In 2009, the trial court appointed Suzanne Cholet, LMFT, as the minors' therapist. It granted Rolf weekly supervised visits with the children. The record omits this order, but the parties refer to it.

In 2011, minors' counsel recommended therapeutic visits because the visits with Rolf were detrimental. In support of the request, Cholet declared, "The visits with father are not only detrimental to the children, they are counterproductive to forming a child/parent relationship with [father]." Cholet based her opinion on her weekly observations of the minors following their visits with Rolf between 2009 and 2011.

The trial court appointed a therapist to conduct therapeutic visits. He withdrew before conducting any visits, because of Rolf's and Karen's "resistance" to the process. Rolf had no visits with his children for eight months. The trial court appointed a replacement therapist, Stephanie Wilson, LMFT, to conduct the therapeutic visits. Tension later developed between Cholet and Wilson.

First, a disagreement arose between Cholet and minors' counsel about whether Karen and Rolf's daughter needed a psychological evaluation. Minors' counsel reported that the daughter, now eight years old, needed to be evaluated by a psychologist and that the minors' therapist, Cholet, was "adamant that the [daughter] does not require an evaluation." Minors' counsel reported that disciplinary records from the daughter's school from 2010 to 2012 recorded 90 instances of behavior, many of which involved her

2

use of force against students and some of which involved use of force against staff. There were 10 notices of suspension between January 2011 and April 2012. The daughter's teacher reported the daughter's eyes were frequently moving, darting or rolling, and she "exhibits constant twisting and jerky body movements." The daughter's current school principal and teacher believed an evaluation would be helpful. Neither Karen nor Cholet thought an evaluation was necessary. Both perceived that the problem was bullying at the school. Minors' counsel believed that Cholet was relying on Karen for information and not communicating with the school. He also asked to be relieved because Karen had made accusations against him and because all of the parties "are manipulative."

The trial court did not order an evaluation or relieve minors' counsel, but it ordered Cholet to remain in contact with the children's school and to address any issues that might arise. It also ordered the school to communicate with Cholet.

In December 2013, minors' counsel asked the trial court to replace Cholet. Wilson submitted a declaration in support of the request. She expressed "concern[] that [Cholet] was not encouraging or helping [the children] to adjust to visitation with their father, but rather supporting their resistance to it." She wrote, "[W]hat the children reported to their therapist, Suzanne Cholet, was greatly different than what I observed during their visits [with Rolf]."

Rolf had not participated in any therapeutic visits in the past seven months. Counsel declared his "understanding that the therapeutic visits were not progressing as a result of the children's therapist[], Suzanne Cholet, not encouraging the children's cooperation with visitation." He offered his opinion that "[t]he therapeutic visits between [Rolf] and the children, if they continue, will likely not make any progress, unless and until the children have a therapist that encourages and/or supports the therapeutic visitation process, and [does] not foster the children's resistance to therapeutic visits." Counsel declared that Cholet "is allied with the mother" and "has acted to undermine the visits." He acknowledged that the children had a "long established therapeutic

3

relationship" with Cholet, but questioned the "progress, if any" the children had made in their many years of therapy with her.

Karen opposed the request to replace Cholet. The record does not include any declaration or testimony submitted from Cholet on the question of her replacement. Karen wrote, "Ms. Cholet reached out to Ms. Wilson, but initially Ms. Wilson would not speak with her or share any information with her." Karen wrote that eventually the two therapists did communicate and agreed to reduce Rolf's visits to one per month until summertime. Karen wrote, "Rolf had problems communicating with our children long before Ms. Cholet came on board in 2009." She recounted his criminal history, criticized his lack of gift giving, and pointed out that "[n]one of the foregoing is the fault of Ms. Cholet."

The matter was initially set for hearing on December 16, 2013. Karen did not appear. Rolf and minors' counsel stipulated to continue the matter to February 3, 2014. Karen filed her written opposition on January 6.

At the February 2014 hearing, the trial court terminated Cholet's appointment and appointed Stephanie Fuller, LMFT, as the minors' therapist. Karen filed objections to the trial court's proposed findings and order which the court overruled. She wrote about the relative merits of herself and Rolf as parents. She accused minors' counsel of violating the children's fundamental rights, engaging in false billing, and filing false information, among other things. She accused the court of unethical practices. She wrote that she "was never personally served with anything" related to the December 16 hearing, "and all the documents [she] did receive were mailed." Karen pointed out that the children had a bond with Cholet and argued it would be "cruel and abusive" to replace her. She said that minors' counsel had not given Cholet an opportunity to respond to the charges against her; he had subpoenaed Cholet for the February 3 hearing "but excused her when she showed." The record does not include a reporter's transcript of the February 3 hearing.

4

DISCUSSION

The record does not support Karen's contention that the trial court abused its discretion when it replaced the minors' therapist or that Karen did not have notice of the hearing. The trial court reasonably could have concluded that the order advanced the best interest of the children. (Fam. Code, § 3190, subd. (a)(2)[2]; see *In re Marriage of Heath* (2004) 122 Cal.App.4th 444, 448-449.)

Minors' counsel served Karen with his request for an order appointing an alternate therapist by mail on December 12, 2013, together with Wilson's supporting declaration. The matter was initially set for hearing December 16, but the trial court continued it to February 3, 2014. Karen had ample time to respond before the hearing, and did so in writing on January 6.

The trial court did not abuse its discretion when it replaced Cholet. A trial court may require a parent or a child who is involved in a custody dispute to participate in counseling with a licensed health care professional, or other mental health counseling, for a renewable one-year term if the court finds that the dispute poses a substantial danger to the best interest of the child and counseling is in the best interest of the child, considering any history of domestic violence and other factors. (§ 3190.) No one challenged the trial court's power here to appoint a therapist for the minors.

Karen contends the trial court should not have terminated Cholet's appointment as the minors' therapist because there was no evidence of "wrongful conduct" and Cholet had a longstanding relationship with them. "Wrongful conduct," was not required. The best interest of the child governs appointment of a therapist. (§ 3190, subd. (a)(2).) The paramount consideration in all matters of child custody and visitation is the welfare of the child. (*Sanchez v. Sanchez* (1961) 55 Cal.2d 118, 121.) The trial court has wide discretion to determine the best interest of the child. (§ 3011 [factors to consider in determining best interest of child]; see *In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 955.)

---

[2] All statutory references are to the Family Code.

The trial court reasonably could have concluded that its decision to replace the therapist "advanced the 'best interest'" of the minors. (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32.) A trial court must specifically design an order for counseling pursuant to section 3190 to facilitate communication between the parties regarding the child's best interests, reduce conflict regarding custody or visitation, and improve the quality of the parenting skills of each parent. (§ 3191.) Implicit in the trial court's order was its determination that therapy with Cholet was not advancing these goals. The partial record on appeal supports its determination. Wilson, the therapist charged with supervising therapeutic visits, raised a concern that Cholet might be encouraging the children to resist the therapeutic visits. Cholet had previously declared her view that visits with Rolf were detrimental, and there is no evidence that her views changed after therapeutic visits commenced. Communication between Cholet and Wilson was clearly strained, as demonstrated by the declarations of Wilson, minors' counsel, and Karen. There was a perception that Cholet was aligned with Karen. Whether that perception was real or imagined, the trial court rationally could have concluded that it interfered with its goal of reducing conflict and improving Rolf's parenting skills. It did not abuse its discretion when it replaced the minors' therapist.

DISPOSITION

The order is affirmed.

<u>NOT TO BE PUBLISHED.</u>

GILBERT, P.J.

We concur:

YEGAN, J.

PERREN, J.

6

Gayle L. Peron, Judge

Superior Court County of San Luis Obispo

_____

Karen Liebescher Erikson, in pro. per., for Appellant.

Edward L. Somogyi, APLC, Edward L. Somogyi for Respondent.