Filed 11/3/21  Guardianship of O.M.R. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| Guardianship of O.M.R. et al., Minors. | |
| MARIE V., | F081947 |
| Petitioner and Respondent, | (Super. Ct. Nos. PR-19-001010, PR-19-001200) |
| v. | |
| SYLVIA L., | **OPINION** |
| Objector and Appellant. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  Jack M. Jacobson, Judge.

The Appellate Law Firm and Berangere Allen-Blaine for Objector and Appellant.

No appearance for Petitioner and Respondent.

-ooOoo-

Following a trial or evidentiary hearing, the trial court granted the petitions by Marie V. (Grandmother) for guardianship of her five grandchildren over the objection of the children's mother, Sylvia L. (Mother).[1] The three oldest children had already been in Grandmother's care for a substantial period of time, and the trial court applied Family Code section 3041 in determining that Grandmother's role as a de facto parent should continue. As to the two youngest children, the trial court granted the petition because, among other reasons, keeping the siblings together was deemed to be in their best interests. Mother appeals from the trial court's guardianship order.[2] On the record before us, we conclude that Mother has failed to affirmatively demonstrate the trial court's ruling constituted an abuse of discretion. Accordingly, the order of the trial court is hereby affirmed.

## FACTS AND PROCEDURAL HISTORY

On October 2, 2019, Grandmother filed a petition in the trial court to be appointed as the guardian of Mother's three oldest children. We note that Grandmother is the children's paternal grandmother. The petition stated the three children have resided with Grandmother full time in El Paso, Texas, for over three years in a safe, caring, and stable home environment.[3] Apparently, Mother had arranged for the children to be returned to her custody in California, but shortly thereafter Mother was back in jail and the children's father remained incarcerated. Under the circumstances, a formal order of guardianship

---

[1]    Our reference to the parties as Mother and Grandmother is for ease of expression; no disrespect is intended.

[2]    No respondent's brief was filed herein. We shall proceed to consider the appeal based on Mother's opening brief as appellant under the limited record provided to us. (Cal. Rules of Court, rule 8.220(a)(2).)

[3]    During the time the guardianship petitions were pending, Grandmother established a temporary residence in Modesto, California. A portion of her temporary guardianship of the children apparently transpired while she was in Modesto awaiting resolution of her petitions.

was assertedly needed. On November 26, 2019, Grandmother filed a second petition seeking to also be appointed as the guardian of Mother's two youngest children. This petition stated that both "parents are incarcerated" and Grandmother "want[s] to keep all siblings together under [her] care." Grandmother noted with attached documentation that mother was charged in Santa Clara County with theft, child endangerment, criminal fraud, possession of methamphetamine, among other charges.

Mother filed objections to the petitions for guardianship. She requested custody of the children, seeking to have them live with her in Sylvia T.'s (the maternal grandmother's) home, which she said was stable, clean and drug free. Mother was in custody when her objections were filed. The trial court referred the matter out for an investigation by a court investigator. On January 6, 2020, Grandmother (i.e., the paternal grandmother, Marie V.) was appointed as temporary guardian of the five children, and a trial date was set.

On October 1, 2020, the trial of this matter was held. The trial court heard and considered all the evidence presented by the parties, including oral testimony and documentary evidence, and afterwards the trial court took the matter under submission.

On October 6, 2020, the trial court issued its written tentative decision. In the tentative decision, the trial court first discussed some of the relevant evidence, including the court investigator's report, Grandmother's evidentiary showing, and Mother's evidentiary showing. We briefly summarize the trial court's description of the evidence, as recited by the court in the tentative decision. The investigator's report,[4] filed on February 3, 2020, had presented information that the three older children had been well cared for by Grandmother (who resides in Texas), and all three were happy and content

---

[4]     This report is not part of the record on appeal. The trial court referred to the court investigator by name—i.e., Fatima Villasenor—and the date of the report. An earlier report by an investigator with the District Attorney's Office, Cristina Magana, appears in the record, but not Villasenor's investigative report.

while in her care. Letters from school officials in El Paso, Texas, indicated they were doing well in school. In contrast, at least two of the children were adamant that they did not want to return to California, asserting that Sylvia T. (the maternal grandmother) was mean to them and did not feed them when they were briefly in her home. Based on the investigator's interview of the children, the two youngest children have "a strong attachment to their older siblings." The investigator stated that all parties indicated "it would be in the minors' best interest to keep the siblings together." All five of the children "appear[ed] to be thriving in the care of … [G]randmother." Therefore, the investigator recommended the trial court grant Grandmother's petitions for guardianship.

Grandmother and other witnesses on her behalf provided evidence confirming Grandmother's demonstrated ability to care for the children. The children's daily needs were being met, and they are happy and thriving. Grandmother lives in a rented five-bedroom house with her mother and her grandmother, the latter of whom are retired and provide childcare while Grandmother is at work.

Grandmother stated she does not believe that Mother is ready to take custody of all five children at this time, as she was just released from jail and does not have a stable living environment. Grandmother described the children as being somewhat upset or fearful when Mother calls, and having lingering fears that someone (i.e., the maternal grandmother) might show up and take them.

Mother opposed the petitions and requested the trial court to deny them. According to the tentative decision, Mother was released from jail on September 13, 2020, only a few weeks before the trial, and she remained on probation. At that time, there were no other outstanding criminal cases. She was residing at her mother's (i.e., Sylvia T.'s) residence. Mother claimed she will be attending a school to learn medical billing and she will also look for a part time job. Mother and all the children would reside in one bedroom of Sylvia T.'s home. Mother completed parenting classes and her GED during her incarceration. Mother had several family members testify or submit

4.

letters that the children were happy when they briefly lived with Mother and that Mother was an excellent parent.

Mother stated that in August 2019, the children were together in Modesto with her for a birthday party for one of her daughters, and Sylvia T. and Grandmother were there also. When Grandmother wanted to return to Texas with the children (since school was about to commence), an altercation took place and the police arrived. The trial court noted from the record that once the police talked to all the parties, the police allowed Grandmother to take the children. The trial court considered the police report concerning the altercation, which included Grandmother's explanation that she was physically attacked when she sought to take the children back home to Texas since school was starting the next week. Concerning this event, it appears the trial court found Grandmother's version to be credible.

Having summarized the evidence, the trial court proceeded in its tentative decision to explain the court's legal and factual analysis and conclusions. The trial court noted that Family Code section 3041 governed as to the three older children. Under that section, detriment to a child or children may include removal from a stable placement with a person who has assumed on a day-to-day basis the role of a de facto parent for a substantial period of time. Where the person seeking guardianship is a person who has been such a de facto parent, a presumption exists that remaining in that person's custody is in the child or children's best interest, absent a showing to the contrary. (See Fam. Code, § 3041, subds. (c) & (d).) The trial court held that Grandmother was a de facto parent of the three older children, and therefore the presumption applied that remaining in Grandmother's custody would be in the children's best interest. Mother failed to show by a preponderance of the evidence to the contrary. In that regard, the trial court found that, contrary to Mother's testimony, it did not appear that she had maintained a stable living environment for herself. She originally left the older children with Grandmother because she realized she could not provide a stable living environment for them.

5.

Moreover, "[s]hortly after the guardianship proceedings commenced, [M]other turned herself in on outstanding warrants. She was incarcerated from mid-November 2019 until 9-13-20, just a little over two weeks before the trial. Other than the few weeks in the summer, [M]other has never had the responsibility of caring for all the children at the same time."

With respect to the other two children, the trial court noted the parties agreed that keeping all the children together was in their best interest. Further, the trial court also found "based upon this fact and the other evidence presented that [G]randmother has met her burden of proof to demonstrate that the younger children would suffer detriment if they were in [M]other's custody and separated from the older siblings." Therefore, Grandmother would also be appointed guardian of the younger two children.

Finally, in light of the fact that the trial court was granting the guardianship to Grandmother and her permanent residence was in Texas, the trial court granted her petition to fix the children's residence with her in Texas. As to Mother's visitation, the trial court granted Grandmother discretion regarding all visitation and contact with Mother. The trial court stated that it "understands from the evidence that the children have been reluctant at times to talk [to] or see their mother. Grandmother indicated that she intends to establish counseling for the children to address this issue."

Neither party requested a more specific statement of decision pursuant to Code of Civil Procedure section 632. Therefore, the tentative decision became final and notice of entry of judgment was entered by the trial court on October 6, 2020.

Mother timely filed two notices of appeal, one relating to the guardianship of the three older children, and one relating to the guardianship of the two younger children. Mother has filed a single opening brief covering all issues. We treat her appeals as a single appeal.

6.

**DISCUSSION**

## I.  Standard of Review

The purpose of a probate guardianship is to protect the welfare of a minor child who ordinarily cannot protect himself or herself.  (*Guardianship of A.L.* (2014) 228 Cal.App.4th 257, 267.)  Under Probate Code section 1514, a court may appoint a probate guardian if "it appears necessary or convenient" (Prob. Code, § 1514, subd. (a)), but the same section expressly provides that in making such an appointment the trial court is governed by Family Code section 3020 et seq., and section 3040 et seq., which are family law provisions relating to child custody and best interest of the child.  (Prob. Code, § 1514, subd. (b); see *Guardianship of A.L.*, *supra*, at p. 267.)[5]  Family Code section 3020, subdivision (a), declares that "the health, safety, and welfare of children shall be the court's primary concern in determining the best interests of children when making any orders regarding the physical or legal custody or visitation of children." (Fam. Code, § 3020, subd. (a).)  Under Family Code section 3040, subdivision (a), parents are first in the order of preference for a grant of custody, and a trial court is allowed "the widest discretion to choose a parenting plan that is in the best interest of the child." (Fam. Code, § 3040, subd. (d).)  Before granting custody to a nonparent over parental objection, the court must find that granting custody to a parent would be detrimental to the child, and that granting custody to the nonparent is required to serve the best interest of the child.  (*Guardianship of Ann S*. (2009) 45 Cal.4th 1110, 1123; Fam. Code, § 3041, subds. (a), (b).)  The finding of detriment must be supported by clear and convincing evidence.  (Fam. Code, § 3041, subd. (b).)

---

[5]     Probate Code section 1514, subdivision (b)(1), states:  "In appointing a guardian of the person, the court is governed by Chapter 1 (commencing with Section 3020) and Chapter 2 (commencing with Section 3040) of Part 2 of Division 8 of the Family Code, relating to custody of a minor."

In 2002, the Legislature added new subdivisions to Family Code section 3041 emphasizing the importance of a stable home environment for the child. (*Guardianship of Ann S.*, *supra*, 45 Cal.4th at p. 1123.) As summarized by the Supreme Court in *Guardianship of Ann S.*: "[The Legislature] specified that ' "detriment to the child" includes the harm of removal from a stable placement of a child with a person who has assumed, on a day-to-day basis, the role of his or her parent, fulfilling both the child's physical needs and the child's psychological needs for care and affection, and who has assumed that role for a substantial period of time. A finding of detriment does not require any finding of unfitness of the parents.' (Fam. Code, § 3041, subd. (c).) And, 'if the court finds by a preponderance of the evidence that the person to whom custody may be given is a person described in subdivision (c), this finding shall constitute a finding that the custody is in the best interest of the child and that parental custody would be detrimental to the child absent a showing by a preponderance of the evidence to the contrary.' (Fam. Code, § 3041, subd. (d).) Thus, the Legislature has determined that the critical finding of detriment to the child does not necessarily turn on parental unfitness. It may be based on the prospect that a successful, established custodial arrangement would be disrupted. (See *Guardianship of L.V.* [(2006)] 136 Cal.App.4th [481, 491].)" (*Guardianship of Ann S.*, *supra*, at p. 1123.)

When a court appoints a guardian, the parents' rights are suspended for the duration of the probate guardianship. (*Guardianship of Ann S.*, *supra*, 45 Cal.4th at pp. 1123–1124.) The court may subsequently terminate a guardianship on a petition by the guardian, a parent, or the child, based on the child's best interest. (*Id*. at p. 1124; see Prob. Code, § 1601.) Unless ended by a court order, a guardianship "continues until the child 'attains majority ....' " (*Guardianship of Ann S.*, *supra*, at p. 1124.)

As with other child custody decisions, a trial court's ruling on a guardianship petition is reviewed for abuse of discretion. (See *Guardianship of Vaughan* (2012) 207 Cal.App.4th 1055, 1067 [trial court's application of the law to the facts in a

8.

guardianship petition is reviewed under this deferential standard]; *Guardianship of M.S.W.* (1982) 136 Cal.App.3d 708, 712; *In re B.G.* (1974) 11 Cal.3d 679, 699 ["The issue of custody is one committed to the discretion of the trial court"].) " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319; accord, *In re Marriage of Connolly* (1979) 23 Cal.3d 590, 598.) As to the factual findings of the trial court, we apply the substantial evidence test. (*Guardianship of Vaughan*, *supra*, at p. 1067.) " 'We view the evidence in a light most favorable to the trial court's decision, resolving all conflicts in the evidence and drawing all reasonable inferences in support of that court's findings. [Citation.] In short, we review the evidence but do not weigh it; we defer to the trial court's findings to the extent they are supported by substantial evidence. [Citations.]' " (*Ibid.*)

To the extent the clear and convincing standard applied in the trial court, when we address a claim raised on appeal that the evidence does not support a finding made under this standard, we review the record for sufficient evidence in a manner mindful of the elevated degree of certainty required by this standard. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1000–1001, 1011–1012.) Thus, "[w]hen reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Id.* at p. 1011.)

## II. The Trial Court Correctly Applied Family Code Section 3041 in Granting Petition for Guardianship of the Three Older Children

The trial court's order first separately addressed whether Grandmother's guardianship petition should be granted as to the three older children of Mother. As

9.

noted, the trial court applied Family Code section 3041.[6]  Based on its analysis under that section, the trial court made findings that it would be detrimental to the three older children to award custody to Mother *and* that granting custody to Grandmother would be in the children's best interest.  In her appeal, Mother argues the trial court erred because, allegedly, these necessary findings under section 3041 were not supported by substantial evidence, especially when the clear and convincing standard of proof is considered.  As explained below, we disagree.

We begin our discussion with a more thorough elaboration of the relevant statute. Section 3041 provides that before granting custody of a child to a nonparent over the objection of a parent, the court must find that (i) granting custody to a parent would be detrimental to the child *and* (ii) granting custody to the nonparent is in the best interest of the child.  (§ 3041, subd. (a).)  The finding of detriment must be supported by clear and convincing evidence.  (§ 3041, subd. (b).)  However, a finding of detriment does not require a finding of parental "unfitness" (§ 3041, subd. (c)) because section 3041 provides "an alternative way to establish detriment to the child."  (*Guardianship of Vaughan*, *supra*, 207 Cal.App.4th at p. 1059.)  As subdivision (c) of section 3041 clearly states, " 'detriment to the child' includes the harm of removal from a stable placement of a child with a person who has assumed, on a day-to-day basis, the role of the child's parent, fulfilling both the child's physical needs and the child's psychological needs for care and affection, and who has assumed that role for a substantial period of time." (§ 3041, subd. (c).)  The person described in subdivision (c) is sometimes referred to in the cases as one who has undertaken the role of a "de facto parent."  (See, e.g., *Guardianship of A.L.*, *supra*, 228 Cal.App.4th at pp. 267–268; *H.S. v. N.S.* (2009) 173 Cal.App.4th 1131, 1137.)

---

[6]    Unless otherwise indicated, further statutory references are to the Family Code.

If the person seeking custody is found to be such a de facto parent, a rebuttable presumption is created under section 3041, subdivision (d), which states as follows: "Notwithstanding subdivision (b), if the court finds by a preponderance of the evidence that the person to whom custody may be given is a person described in subdivision (c), this finding shall constitute a finding that the custody is in the best interest of the child and that parental custody would be detrimental to the child absent a showing by a preponderance of the evidence to the contrary." (§ 3041, subd. (d).) Thus, "section 3041, subdivision (d) reflects a legislative assessment that ' "continuity and stability in a child's life most certainly count for something" ' and, 'in the absence of proof to the contrary, removing a child from what has been a stable, continuous, and successful placement is detrimental to the child.' " (*H.S. v. N.S.*, *supra*, 173 Cal.App.4th at p. 1138, quoting from *Guardianship of L.V.*, *supra*, 136 Cal.App.4th at p. 491; accord, *Guardianship of Vaughan*, *supra*, 207 Cal.App.4th at p. 1070.)

Here, the trial court's tentative decision expressly and carefully followed the terms of section 3041. After reviewing the evidence and summarizing section 3041, the trial court found the three oldest children were under Grandmother's care for three years in which Grandmother was in the role of "the children's de facto parent" under the statute. In light of this stable and successful custody relationship, the trial court held it would be detrimental to remove the three children from Grandmother's care because "[t]he evidence showed that she was the de facto parent for a substantial period of time before filing for the guardianship." Therefore, the trial court found "there is a presumption [under section 3041] that awarding custody [to Grandmother] is in the best interest of the children and that parental custody would be detrimental to the children absent a showing by a preponderance of the evidence to the contrary."

Based on the evidence identified in the trial court's tentative decision, as summarized hereinabove, including Grandmother's testimony, Grandmother's other supporting witnesses, and the report by the court investigator, we conclude the trial

11.

court's finding that Grandmother was a de facto parent (i.e., a person described under § 3041, subd. (c)) in the lives of the three older children was amply supported. (See § 3041, subd. (d) [finding of de facto parent status is made by "a preponderance of the evidence"].) The record referred to by the trial court reflected the children were well cared for by Grandmother, were happy and thriving in her home, and were doing well in school, for a substantially long period of time.

In her appeal, Mother argues regarding the de facto parent finding that the trial court failed to consider one piece of evidence; namely, that one of the daughters had to receive counseling for a stress disorder. However, contrary to Mother's argument, that evidence *was* considered by the trial court in *favor* of Grandmother's case, and we note there were indications in the record the daughter's stress-related disorder was caused by Mother's side of the family. In any event, without more, the mere fact that one daughter was experiencing significant stress during this custody dispute is not surprising, and by itself it is at most ambiguous and fails to provide support for Mother's position. It certainly does not diminish the adequacy of the factual showing in support of the trial court's finding that Grandmother was in the role of a de facto parent for the three older children.

Similarly, Mother argues the trial court failed to adequately consider isolated comments contained in the court investigator's report to the effect that two of the daughters initially indicated they wanted to be with their mother. However, the court investigator's report is not a part of the appellate record, and therefore we cannot adequately evaluate this contention and deem it to be forfeited.[7] (See *Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655 [because trial court judgment is presumed correct, a failure to support each point with citations to material facts in the record may result in

---

[7] Mother also did not provide a reporter's transcript or a settled statement of the oral testimony before the trial court in the dispositive proceedings. Additionally, Mother could have, but did not, request a more detailed statement of decision by the trial court.

12.

forfeiture of the point raised]; *Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416 [if record is inadequate for meaningful review, the appellant defaults and the trial court's decision is affirmed]; *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 [inadequate record waives argument].)  In any event, the trial court *did* consider the court investigator's report including the initial comments by the two daughters.  According to the trial court, one daughter initially indicated to the investigator she wanted to be with her mother, but once returned to Grandmother's care she was "happy" to be back with her and expressed that her maternal grandmother (i.e., Sylvia T.) and stepgrandmother (Roberta C.) were mean to her.  The other daughter interviewed by the investigator confirmed she was "feeling pressured by [M]other and maternal grandmother to indicate that she wanted to be in their care."  Again, these isolated bits of evidence recited by Mother do not detract from the overall adequacy of the evidence to support the trial court's finding of Grandmother's status as a de facto parent.  If anything, the isolated remarks confirm these two daughters were happy when in Grandmother's care, and they fail to show a contrary conclusion should have been reached as to Grandmother's de facto parent status.  For these reasons, we conclude that Mother's sufficiency of the evidence challenge of the trial court's finding that Grandmother was and is a de facto parent to the three older children is unsupported and without merit.

Where, as here, the trial court finds that the person to whom custody may be given "is a person described in [section 3041,] subdivision (c)" (i.e., a de facto parent), this finding "shall constitute a finding that the custody [with the de facto parent] is in the best interest of the child and that parental custody would be detrimental to the child *absent a showing by a preponderance of the evidence to the contrary*."  (§ 3041, subd. (d), italics added.)  That is, "a showing of de facto parent status by a nonparent creates a *rebuttable presumption* that it would be detrimental to place the child in the custody of a parent and

the best interest of the child requires nonparental custody." (*Guardianship of A.L.*, *supra*, 228 Cal.App.4th at p. 268.)

As to this rebuttable presumption, the court found that Mother "failed to meet [her] burden." As the trial court explained in its tentative decision: "Contrary to Mother's testimony, she has not demonstrated that she has maintained a stable living environment for herself. She left the older children with [G]randmother because she realized that she could not provide a stable living environment for them. Shortly after the guardianship proceedings commenced, [M]other turned herself in on outstanding warrants. She was incarcerated from mid-November 2019 until 9-13-20, just a little over two weeks before the trial. Other than the few weeks in the summer, [M]other has never had the responsibility of caring for all the children at the same time." In her appeal, Mother argues that she presented witnesses—i.e., family members—that stated she would make an excellent parent and the children were or would be happy living with her. However, both Mother and Grandmother presented such witnesses, in addition to their own testimony, and the trial court had to weigh and evaluate all such evidence, resolve conflicts and determine credibility. (See *Guardianship of Vaughan*, *supra*, 207 Cal.App.4th at p. 1067 [we view the evidence in a light most favorable to the trial court's decision, drawing all inferences in support of that court's findings].) The trial court obviously resolved the conflicts and credibility issues in favor of Grandmother, and Mother has failed to persuasively demonstrate that such findings of fact constituted an error or abuse of discretion.

Under section 3041, subdivision (d), the finding by the trial court in this case that Grandmother is a person described in subdivision (c) (i.e., a de facto parent) *constitutes* "a finding that the custody is in the best interest of the child and that parental custody would be detrimental to the child absent a showing by a preponderance of the evidence to the contrary." (§ 3041, subd. (d).) Since Mother did not overcome the presumption by a preponderance of the evidence, the statutory finding is established that Grandmother's

14.

custody of the three older children is in their best interest and Mother's custody would be detrimental to them. Moreover, based upon our review of the entire record, and taking the statutory presumption into account along with Mother's failure to demonstrate otherwise, we conclude that a reasonable trier of fact could have made the finding of such detriment by clear and convincing evidence. (*Conservatorship of O.B.*, *supra*, 9 Cal.5th 989, 1000–1001, 1011–1012.) Therefore, the trial court's determination to grant Grandmother's guardianship petition concerning the three older children is affirmed.

**III.  No Abuse of Discretion Shown in Trial Court's Order Granting Grandmother's Petition for Guardianship of the Two Younger Children**

After making the determination to grant Grandmother's guardianship petition as to the three older children, the trial court next considered Grandmother's petition to also appoint her as guardian of the two younger children. The trial court granted the petition to include the two younger children in Grandmother's guardianship. The trial court found "that [G]randmother established by clear and convincing evidence that it would be detrimental to allow the two youngest children to be in [M]other's custody" and "[i]t would not be in the best interest of the children to have them separated from each other." Based on our review of the trial court's tentative decision and the underlying record, it is apparent that the trial court's decision on this issue was supported by several sound reasons: (1) All parties were in agreement that it would be in the best interests of the children to keep all five siblings together; (2) there was evidence of a close bond between the siblings; and (3) California law has a strong policy in favor of keeping siblings together in custody matters absent a compelling circumstance to justify their separation (see *In re Marriage of Heath* (2004) 122 Cal.App.4th 444, 449–450; *In re Marriage of Williams* (2001) 88 Cal.App.4th 808, 813–814). Additionally, the evidence of Mother's criminal history and past inability to care for her children, her recent incarceration, and a lack of a stable living environment was also considered by the trial court.

15.

Under the above circumstances, Mother has failed to demonstrate the trial court abused its discretion by including the two younger children in the guardianship with the other three siblings under Grandmother's care.  To the extent that the clear and convincing evidence standard applied to this aspect of the trial court's ruling, we conclude that a reasonable trier of fact could have made this finding of such detriment by clear and convincing evidence.  (See *Conservatorship of O.B.*, *supra*, 9 Cal.5th 989, 1000–1001, 1011–1012.)

## IV.     Other Issues—No Abuse of Discretion Affirmatively Shown

Because Grandmother's home was in Texas, the trial court also allowed Grandmother to fix the children's residence in Texas.  That is, it was understood that if Grandmother was appointed guardian, the children would reside with her in Texas.  In view of the other rulings establishing that Grandmother's care and custody was in the best interests of the children, we discern no error or abuse of discretion.  As to visitation, the trial court granted Grandmother discretion regarding visitation and contact with Mother.  The trial court observed it "understands from the evidence that the children have been reluctant at times to talk [to] or see their mother" and "Grandmother indicated that she intends to establish counseling for the children to address this issue."

In her appeal, Mother states her disagreement with the trial court's decisions on the above issues of Texas residency and visitation, but she has failed to present adequate factual and legal analysis to demonstrate a clear abuse of discretion.  A judgment or order of the lower court is *presumed correct*; and all intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be *affirmatively* shown.  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  Further, "a reviewing court should not disturb the exercise of a trial court's discretion unless it appears that there has been a miscarriage of justice."  (*Id*. at p. 566.)  " 'The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not

substitute its opinion and thereby divest the trial court of its discretionary power.' " (*Ibid.*) Mother has failed to meet this fundamental burden as appellant. In addition, as we have noted earlier herein, Mother has failed to present an adequate record in connection with her claims on appeal. Among other things, we do not have the court investigator's report, nor a settled statement or transcript of the oral testimony and other evidence presented at trial. Thus, the record is wholly inadequate for meaningful review. (*Gee v. American Realty & Construction, Inc.*, *supra*, 99 Cal.App.4th at p. 1416 [if record is inadequate for meaningful review, the appellant defaults and the trial court's decision is affirmed]; *Duarte v. Chino Community Hospital*, *supra*, 72 Cal.App.4th at p. 856 [inadequate record waives argument].) " '[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented.' [Citations.]" (*Bennett v. McCall* (1993) 19 Cal.App.4th 122, 127.) Given the incomplete state of the record, and Mother's failure to present adequate legal and factual analysis, we will not second guess the trial court's exercise of discretion in regard to residency and visitation issues.

## DISPOSITION

The guardianship order and judgment of the trial court are affirmed. As Mother was the only party on appeal, she must bear her costs thereof.

LEVY, J.

WE CONCUR:

HILL, P.J.

FRANSON, J.

17.