Filed 12/19/18 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| S.Y.,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF<br>SAN DIEGO COUNTY,<br><br>    Respondent;<br><br><br>OMAR M.,<br><br>    Real Party in Interest. | D073450<br><br>(San Diego County<br>Super. Ct. No. DS59250)<br><br><br>ORDER MODIFYING OPINION AND<br>DENYING REHEARING<br><br><br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on November 21, 2018, be modified as follows:

1. On page 1, under counsel listing, name of counsel for Alison C. Puentes-Douglass is hereby corrected to read as follows:

Alison C. Puente-Douglass.

2. On page 5, the first sentence of the second full paragraph is deleted and replaced with the following sentence:

> The trial court made an initial custody order and stated the reasons for its ruling at the close of trial.

3. On page 8, the first sentence of the first full paragraph under the heading Discussion is deleted and replaced with the following sentence:

> At the end of the trial on custody, the court stated the reasons for its ruling and issued an interim order granting joint legal custody and de facto joint physical custody to S.Y. and Omar.

4. On page 12, the last paragraph beginning with the words "Section 3044, subdivision (b)" is deleted and replaced with a new paragraph. This modification includes a new footnote, footnote 5, added at the end of the citation to section 3011, subdivision (e)(1), which will require renumbering of all subsequent footnotes. The paragraph now reads as follows:

> Section 3044, subdivision (b), sets forth seven factors that the court must consider when determining if the presumption was rebutted.[1] The

---

[1] Section 3044, subdivision (b) states:
"In determining whether the presumption set forth in subdivision (a) has been overcome, the court shall consider all of the following factors:
"(1) Whether the perpetrator of domestic violence has demonstrated that giving sole or joint physical or legal custody of a child to the perpetrator is in the best interest of the child. [¶] In determining the best interest of the child, the preference for frequent and continuing contact with both parents, . . . or with the noncustodial parent, . . . may not be used to rebut the presumption, in whole or in part.
"(2) Whether the perpetrator has successfully completed a batterer's treatment program that meets the criteria outlined in subdivision (c) of Section 1203.097 of the Penal Code.
"(3) Whether the perpetrator has successfully completed a program of alcohol or drug abuse counseling if the court determines that counseling is appropriate.

2

factors must be considered, but they are not mandatory requirements for rebuttal of the presumption. "[A]lthough section 3044, subdivision (b) requires the court to *consider* the factors it lists, it does not require the court to find they all have been satisfied in order to find the presumption rebutted." (*Jason P.*, *supra*, 9 Cal.App.5th at p. 1032, fn. 23.) In *Jaime G. v. H.L.* (2018) 25 Cal.App.5th 794 (*Jaime G.*), the appellate court concluded that the trial court had to discuss each of the seven factors in its statement of reasons to provide meaningful review. (*Id.* at p. 805.) We agree that the trial court must consider the statutory factors and provide a statement of reasons explaining the basis of its finding. (See § 3011, subd. (e)(1).)[2] We disagree with *Jaime G.* to the extent it states that each factor must be specifically stated in the statement of reasons. (See *Jaime G.*, at pp. 805–807, 809.) Sometimes, as here, certain factors are not in play. The trial court need only provide sufficient reasons to permit meaningful appellate review. (*In re Marriage of Williams* (2001) 88 Cal.App.4th 808, 815 (*Williams*).) The trial court did so here.

5. On page 16, the last sentence of the second full paragraph beginning with the words "The court's decision" is deleted and replaced with the following sentence:

> The court's ruling was grounded on the specific facts of this case, not on the general statutory preference for continuing contact.

6. On page 24, the first full sentence beginning with the words "The *Jaime G.* court" at the top of the page is deleted and replaced with the following sentence:

---

"(4) Whether the perpetrator has successfully completed a parenting class if the court determines the class to be appropriate.
"(5) Whether the perpetrator is on probation or parole, and whether he or she has complied with the terms and conditions of probation or parole.
"(6) Whether the perpetrator is restrained by a protective order or restraining order, and whether he or she has complied with its terms and conditions.
"(7) Whether the perpetrator of domestic violence has committed any further acts of domestic violence."

[2] "Where allegations about a parent pursuant to subdivision (b) [concerning abuse by one parent against another] . . . have been brought to the attention of the court in the current proceeding, and the court makes an order for sole or joint custody to that [allegedly abusive] parent, *the court shall state its reasons in writing or on the record* . . . ." (§ 3011, subd. (e)(1), emphasis added.)

3

The *Jaime G.* court found that the trial court erred because its statement of reasons did not explain why it failed to impose this condition, thwarting meaningful appellate review.

7. On page 29, heading number 5 is deleted and replaced with the following:

*The Trial Court's Order Was Adequate Because It Stated the Reasons Supporting its Ruling*.

8. Also on page 29, the second full paragraph beginning with the words "S.Y. criticizes" is deleted and replaced with the following paragraph:

S.Y. criticizes the court's statement of reasons because the court did not discuss each statutory factor on the record. The statement of reasons was sufficient because it set forth the court's rationale with sufficient clarity to permit meaningful appellate review.

9. On page 30, the second to last sentence beginning with the words "We are able" is deleted and replaced with the following sentence:

We are able to meaningfully review the court's statement of reasons here.

10. On page 31, the first sentence of the first paragraph is deleted and replaced with the following sentence:

This trial court's statement of reasons is sufficient for meaningful review, particularly in light of the evidence at trial and the extensive information submitted to the court.

The petition for rehearing is denied.

There is no change in judgment.

BENKE, Acting P. J.

Copies to:  All parties

Filed 11/21/18 (unmodified version)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| S.Y.,<br><br>      Petitioner,<br><br>      v.<br><br>THE SUPERIOR COURT OF<br>SAN DIEGO COUNTY,<br><br>      Respondent;<br><br><br>OMAR M.,<br><br>      Real Party in Interest. | D073450<br><br>(San Diego County<br>Super. Ct. No. DS59250) |

Proceedings in mandate and/or prohibition after the trial court made an initial determination of joint physical and legal custody of the parents' child. Sharon L. Kalemkiarian, Judge. Petition denied.

Horvitz & Levy, Jeremy B. Rosen, Shane H. McKenzie, Emily V. Cuatto, Melissa B. Edelson; Legal Aid Society of San Diego, Inc., Alison C. Puentes-Douglass, Maria Maranion Kraus, Yvonne Sterling; Family Violence Appellate Project, Jennafer Dorfman Wagner, Anya Emerson, Shuray Ghorishi and Erin C. Smith, for Petitioner.

No appearance for Real Party in Interest.

Petitioner S.Y. contends that the trial court committed legal error when it found that real party in interest Omar M. had rebutted the presumption that his custody was detrimental to the best interests of their child, A. She requests that we vacate the trial court's interim order granting joint legal and de facto joint physical custody to both parents, direct the trial court to enter a new order after reconsidering the Family Code[3] section 3044 presumption of detriment, and award costs to her. We agree with S. that the court erred in considering Omar's greater fluency in English as a factor rebutting the presumption of detriment due to his domestic violence. We conclude, however, that evidence other than language fluency substantially supports the trial court's ruling that Omar had rebutted the presumption of detriment, and that the trial court did not abuse its discretion in granting joint legal and physical custody to both parents. We deny the petition.

FACTS AND PROCEDURE

S.Y. and Omar were married on December 27, 2013 and had one child, A. On August 29, 2016, Omar was physically violent with S.Y.[4] He pushed and slapped S.Y. several times and choked her. Omar also grabbed S.Y., forced her and A. out of the house, and locked the door. S.Y. had no possessions for herself or for A., who was

---

[3]  Further statutory references are to the Family Code unless otherwise specified. We apply section 3044 as it existed at the time of the trial in October 2017.

[4]  These facts are taken from S.Y.'s statements to the police the next day. The trial court admitted the statements of S.Y. and Omar contained in the police report, but not the rest of the information in the report.

2

almost two at the time. She went to live with her family. Omar was arrested, but the district attorney decided not to file charges against him.

S.Y. obtained a temporary restraining order against Omar, and Omar obtained temporary restraining orders against S.Y., S.Y.'s mother, and her brother. S.Y.'s order granted her sole legal and physical custody of A., but this order was not properly served on Omar. After hearing evidence from all parties, the court denied the mutual requests for permanent restraining orders and dismissed the temporary orders. There was a report to the Health and Human Services Agency that Omar had emotionally abused A., but the agency closed this referral after investigation.

Omar filed a marital dissolution action against S.Y. in the family court on October 6, 2016. Three weeks later, he filed a request for an order for joint legal custody and primary physical custody of A. Omar and S.Y. met with a Family Court Services (FCS) counselor in March 2017. The counselor issued a report on April 5, recommending joint legal custody and primary physical custody to S.Y., with limited, supervised visitation for Omar. The report recommended that after Omar completed a co-parenting class, parenting class, and three months of consistent visitation, he could have slightly more visitation with A., unsupervised. The report also recommended that Omar and S.Y. both complete a parenting class of at least six weeks' duration and a co-parenting class, and for S.Y. to participate in individual counseling.

At a preliminary hearing on April 24, 2017, the family court awarded S.Y. physical custody of A., with Omar to have supervised visitation twice a week for five hours each time. The visits were to be supervised by Omar's sister, with conditions of no

3

corporal punishment and no smoking in front of A. The court ordered sole legal custody to S.Y. because she and Omar were not communicating well. The court also ordered that Omar have full access to A.'s medical records and recommended that he attend A.'s doctor appointments.

A trial on the custody issues was held on October 12, 2017. S.Y. testified that Omar slapped her and pulled her hair frequently, whenever there was a problem between them. She said that on August 29, 2016, Omar slapped her, continued hitting her, pulled her hair, strangled her, kicked her, and pushed her out of the house with A. Omar gave a different story of what happened on August 29, 2016, painting S.Y. as the instigator, but the trial court accepted S.Y.'s description of Omar's violence and choking of her.

S.Y. did not let Omar see A. or talk with him on the phone from the time she moved out in August 2016 until February 2017. She explained that she obtained a temporary restraining order on September 7, 2016, granting her custody of A. The order was dissolved when it expired, however. S.Y. said she did not understand what the courts said about the custody arrangements with Omar after both the temporary restraining order hearing and the later hearing when the temporary orders expired, and permanent restraining orders were denied.

S.Y. was the primary caretaker of A., but Omar said he took A. to the doctor because S.Y. could not communicate with the health care provider. After S.Y. moved out of the house, on one occasion she permitted Omar to take A. to the doctor without supervision. Omar testified that when he had visitation with A., he would take A. to breakfast, the park, and the library. Omar helped A. with his English when they were

4

together and read books in English to him. A. had seven cousins on Omar's side of the family and enjoyed spending time with them. They spoke English, so A. would be motivated to speak English with them. Omar called A. every day. S.Y. had no current concerns about Omar's behavior with A. during visitations.

Omar said he understood that A. needed a mother and a father and that he had to have a relationship with both parents. As of October 2017, Omar had finished the co-parenting class and had taken seven parenting classes in a 14-week course. S.Y. was studying English at school and her language skills were improving. She had taken about two months of English classes. She had not started parenting classes, however, because she could not find one in her native language, Chaldean. Nor could she find a co-parenting class that accepted Medi-Cal, and she had not enrolled in individual counseling because she could not find any. She had obtained a driver's license in July 2017.

The trial court made an initial custody order and stated the reasons for its decision at the close of trial. It found that, based on S.Y.'s contemporaneous statements to the police and the photographs of her injuries, Omar had been domestically violent toward her on August 29, 2015. The court applied the section 3044 presumption and found that Omar had rebutted the presumption that an award of custody to him would be detrimental to A.'s best interest.

The court explained the reasons why it found the presumption had been rebutted. It found that Omar was not a risk to A. Omar and S.Y. had two families who were both capable of raising children. The court had no fears for A.'s safety with Omar because his family was around. The court found that Omar was attentive to A. and understood A.'s

5

development. A. did not want to leave Omar at the end of visits. In addition, from October 2016 to January 2017, S.Y. had withheld access to A. She had no concerns about Omar taking A. to the doctor. Omar was more fluent in English than S.Y. The court concluded it was best for A. to have both parents assisting with and navigating through the education and medical systems. Also, joint legal custody was better for A. and was appropriate because both families were very involved in A.'s life. The court further concluded sole legal custody for S.Y. would cause more family battles, which the court wanted to resolve. It felt the parents should share in decisionmaking and keep each other informed.

The court stated that it was giving primary physical custody of A. to S.Y., but actually awarded de facto joint physical custody. The court ordered four days a week of physical custody of A. to S.Y. and three days per week to Omar. The court ordered Omar to take a 12-week domestic violence class and to finish the parenting class he was taking. S.Y. was ordered to get individual therapy or a parenting class. The court gave suggestions for parenting classes in Arabic or Chaldean.

S.Y. filed this Petition for Writ of Mandate and/or Prohibition on February 1, 2017, seeking immediate stay and vacation of the preliminary order. We denied the petition and the request for stay. The Supreme Court granted review of our denial of the petition and transferred the petition back to this court with directions to vacate our order and to instead issue an order to show cause why the relief sought in the petition should not be granted. We vacated our denial of the writ and ordered Omar to show cause why S.Y.'s petition should not be granted. In the meantime, S.Y. filed a direct appeal from an

6

order and written findings filed in the trial court on February 2, 2018, case No. D073568. We granted S.Y.'s request that we consider the appeal and the writ together.

Omar has not filed any responsive documents in this writ proceeding or in the direct appeal. We therefore decide this case based on the record, the documents of which we take judicial notice, S.Y.'s petition, and her oral argument.

On our own motion, we take judicial notice of the records and briefs, including amici curiae briefs, filed in the direct appeal, Omar M. v. S.Y. Y., pursuant to Evidence Code section 452, subdivision (d)(1).[5] Amici the American Civil Liberties Union of Southern California and Asian Americans Advancing Justice - LA (collectively, the ACLU) contend that the custody order violates the equal protection clause, Title VI of the Civil Rights Act, and the First Amendment because the trial court stated that Omar's greater fluency in English was one of the reasons why it found that Omar had rebutted the presumption that custody for him would be detrimental to A.'s best interest. Amicus Bet Tzedek argues that limited English proficiency was a proxy for discrimination based on national origin or immigration status and should not be considered as a factor in custody and guardianship decisions. And amici California Women's Law Center, National Housing Law Project, Public Law Center, and San Diego Volunteer Lawyer Program,

---

[5] Under Evidence Code sections 459, subdivision (d) and 455, subdivision (a), we must provide notice to each party of our intent to take judicial notice of matters of substantial consequence. All parties had the opportunity to respond to the record and amici curiae briefs in the direct appeal. No party responded. Moreover, we do not view those briefs and record as matters of substantial consequence because the substance of those documents is contained in the record on this writ proceeding and the documents have no consequential effect on this opinion.

Inc. (collectively CWL) contend that the section 3044 presumption of detriment to the child's best interest cannot be rebutted without completion of parenting classes and a batterers' treatment program.

DISCUSSION

At the end of the trial on custody, the court stated the reasons for its decision and issued an interim order granting joint legal custody and de facto joint physical custody to S.Y. and Omar. The court found that Omar perpetrated domestic violence on S.Y. on August 29, 2016, giving rise to the section 3044 presumption, but that a grant of custody to Omar would not be detrimental to A.'s best interests. It found that Omar did not pose a risk to A.'s safety, given the presence of family members, and that Omar rebutted the presumption of detriment.

The court stated that it wanted S.Y. to have primary physical custody and that S.Y. should have four days with A. and Omar should have three days. This was actually a de facto joint custody order. (*Celia S. v. Hugo H.* (2016) 3 Cal.App.5th 655, 663 (*Celia S.*) [50/50 time split between parents was de facto joint physical custody even though court said it was giving sole legal and physical custody to mother and characterized father's time as visitation].) " 'Joint physical custody' means that each of the parents shall have significant periods of physical custody." (§ 3004.) In *Celia S.*, the order awarding de facto joint physical custody was reversed because there was simply no evidence rebutting the domestic violence presumption. (*Celia S.*, at pp. 663, 664.) The case was remanded for the court to restore sole custody to the mother but noted that the father could move to modify custody, subject to the section 3044 presumption. (*Id*. at

8

pp. 664–665.)  The appellate court did not find de facto joint physical custody erroneous in all cases, but that it required rebuttal of the section 3044 presumption.  (*Ibid*.)

We note that the trial court stated that A. would be with S.Y. from Sunday evening through Thursday morning and with Omar from Thursday morning (or end of preschool) through Sunday evening.  Considering that A. would be asleep at night, this schedule essentially gave four days to Omar and three days to S.Y. — the opposite of the court's stated intention.  But the court gave leeway to the parties to work out their own days and hours of time with A. and invited counsel to return ex parte if the parties could not work this out.  We trust that the parties have worked out acceptable visitation hours and if not have returned to the trial court for resolution.

The trial court's order, delivered verbally at the end of a day of testimony, is not focused on the appropriate factors for rebutting the presumption of detriment caused by Omar's domestic violence.  The court mixed relevant factors with comments not related to the domestic violence presumption, and, notably, included English fluency, which was an unauthorized and improper fact to consider.  The trial court's findings overall, however, amplified by the evidence presented, provide a sufficient statement of its reasons for finding rebuttal of the presumption to permit meaningful appellate review.  We review the record in the light most favorable to the ruling and uphold judgments if they are correct and based on substantial evidence.  "[I]t is judicial action and not judicial reasoning or argument, which is the subject of review, and, if the former be correct, we are not concerned with the faults of the latter. [Citation.]"  (*In re Quantification Settlement Agreement Cases* (2011) 201 Cal.App.4th 758, 805.)  We conclude that the

trial court abused its discretion in considering English fluency, but that that error was not harmful in this case. Sufficient other evidence supports the court's finding that Omar rebutted the presumption of detriment and the award of joint legal and physical custody to both parents.

1. *Standard of Review*

The judgment or order of the lower court is presumed correct on appellate review. (*In re Marriage of Marshall* (2018) 23 Cal.App.5th 477, 483; *In re Marriage of Falcone and Fyke* (2008) 164 Cal.App.4th 814, 822.) It is presumed that the court regularly performed its duty by understanding and applying the law correctly. (*In re Marriage of Winternitz* (2015) 235 Cal.App.4th 644, 653; Evid. Code, § 664.)

Trial courts have great discretion in fashioning child custody and visitation orders. We therefore review those orders for an abuse of discretion. (*In re Marriage of Fajota* (2014) 230 Cal.App.4th 1487, 1497 (*Fajota*).) "A court abuses its discretion in making a child custody order if there is no reasonable basis on which it could conclude that its decision advanced the best interests of the child. [Citation.] A court also abuses its discretion *if it applies improper criteria or makes incorrect legal assumptions*. [Citation.]" (*Id*., at p. 1497.) "An abuse of discretion occurs when the trial court exceeds the bounds of reason; even if we disagree with the trial court's determination, we uphold the determination so long as it is reasonable. We do not reverse unless a trial court's determination is arbitrary, capricious, or patently absurd." (*Heidi S. v. David H.* (2016) 1 Cal.App.5th 1150, 1163 (*Heidi S.*).) The trial court's factual findings are reviewed for substantial evidence, in the light most favorable to the judgment. (*Fajota*, at p. 1497;

10

*Celia S.*, *supra*, 3 Cal.App.5th at p. 662.) " ' "The trial judge, having heard the evidence, observed the witnesses, their demeanor, attitude, candor or lack of candor, is best qualified to pass upon and determine the factual issues presented by their testimony." ' [Citation.]" (*Heidi S.*, at p. 1163.)

2. *Section 3044 Presumption of Detriment to Best Interest of Child*

The trial court found that on August 29, 2016, Omar perpetrated domestic violence against S.Y. The court stated that this finding triggered a rebuttable presumption that an award of sole or joint custody to Omar would be detrimental to A.'s best interest. Section 3044, subdivision (a) provides: "Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence against the other party seeking custody . . . within the previous five years, there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child, pursuant to Section 3011. This presumption may only be rebutted by a preponderance of the evidence."
The presumption shifts to the perpetrator the burden of persuasion that an award of custody to him would not be detrimental to the best interests of the child. It does not establish a presumption for or against joint custody. The paramount factor for custody of the child is the child's health, safety, and welfare. (*Keith R. v. Superior Court* (2009) 174 Cal.App.4th 1047, 1055 (*Keith R.*); §§ 3020, subd. (a); 3040, subd. (b).)

To rebut the presumption, Omar had to show only that, by a preponderance of the evidence, joint or sole custody to him would not be detrimental to A.'s best interest. (*Jason P. v. Danielle S.* (2017) 9 Cal.App.5th 1000, 1026, 1032, fn. 22 (*Jason P.*); *Celia*

11

*S.*, *supra*, 3 Cal.App.5th at p. 662.) The legal presumption is not, as S.Y. asserts, "that a parent who has committed an act of domestic violence *should not be awarded* sole or joint legal or physical custody of a child." Omar's burden was only *to persuade* the court his custody would *not be detrimental* to A'.s best interest. (§ 3044, subd. (a); see *Jason P.*, at pp. 1026, 1031, fn. 22.) The determination of custody is not to reward or punish the parents for their past conduct, but to determine what is currently in the best interests of the child. (*In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1094 (*LaMusga*); *Keith R.*, *supra*, 174 Cal.App.4th at p. 1055.)

   3. *Statutory Factors for Rebuttal of Presumption of Detriment*

The trial court specifically considered the section 3044 presumption and found that Omar rebutted that presumption.

Section 3044, subdivision (b), sets forth seven factors that the court must consider when determining if the presumption was rebutted.[6] The factors must be considered, but they are not mandatory requirements for rebuttal of the presumption. "[A]lthough section 3044, subdivision (b) requires the court to *consider* the factors it lists, it does not require the court to find they all have been satisfied in order to find the presumption rebutted." (*Jason P.*, *supra*, 9 Cal.App.5th at p. 1032, fn. 23.) In *Jaime G. v. H.L.* (2018) 25 Cal.App.5th 794 (*Jaime G.*), the appellate court concluded that the trial court had to discuss each of the seven factors in its statement of decision to provide meaningful

---

6      Section 3044, subdivision (b) states:
      "In determining whether the presumption set forth in subdivision (a) has been overcome, the court shall consider all of the following factors:

12

review. (*Id.* at p. 805.) We agree that the trial court must consider the statutory factors and provide a statement of decision explaining the basis of its finding. (See § 3011, subd. (e)(1).) We disagree with *Jaime G.* to the extent it states that each factor must be specifically stated in the statement of decision. (See *Jaime G.*, at pp. 805–807, 809.) Sometimes, as here, certain factors are not in play. The trial court need only provide sufficient reasons to permit meaningful appellate review. (*In re Marriage of Williams* (2001) 88 Cal.App.4th 808, 815 (*Williams*).) The trial court did so here.

### a. *Best Interest of the Child*

The first factor to be considered in determining rebuttal of the presumption is the best interest of the child, without using the preference for frequent and continuing contact with both parents to rebut the presumption of detriment. (§ 3044, subd. (b)(1).)[7] The best interest of the child is always the overriding goal, and when there has been domestic abuse, the health, safety, and welfare of the child is the controlling factor. (§ 3020, subd. (c).) The section 3044 presumption does not change that test and does not limit the evidence cognizable by the court. (*Keith R.*, *supra*, 174 Cal.App.4th at pp. 1054–1055; § 3020, subd. (c); § 3011.)[8] The trial court's focus, and our focus on appeal, is the safety of A., through the lens of Omar's demonstrated violence toward S.Y. The trial court said,

---

[7] Section 3020, subdivision (b), states in part: "(b) The Legislature finds and declares that it is the public policy of this state to assure that children have frequent and continuing contact with both parents after the parents have separated or dissolved their marriage . . . ."

13

"And so given that the family members are around, I don't have any fears for [A.'s] safety." The trial court's ruling was supported by substantial evidence. S.Y. has presented no substantial evidence that Omar's legal and physical custody put A. at risk for his safety, and welfare.

Critically, S.Y. testified that she had no concerns about what was happening during visits between Omar and A. The court stated, "[S.Y.] doesn't appear to have any concerns about father's assistance with things like the doctor, which means . . . that father can contribute to the child's well-being by participating in doctor and school appointments." There was testimony of only one incident when Omar was physically violent toward A. Omar slapped A. and pushed him into the wall because A. had thrown a plastic food bowl at A's grandmother. The trial court was concerned about this, admonished Omar to use no corporal punishment, and ordered him to finish his parenting class. But the court also applauded Omar's attendance at the parenting class and found that he had shown a willingness to learn. Although S.Y. had filed a Child Welfare Services (CWS) report that Omar had emotionally abused A., CWS closed this referral after investigation.

---

8    Section 3020, subdivision (c) provides: "Where the policies [favoring the health, safety, and welfare of a child and preference for continuing contact with both parents] are in conflict, any court's order regarding physical or legal custody or visitation shall be made in a manner that ensures the health, safety, and welfare of the child and the safety of all family members."
     Section 3011 provides in part: "In making a determination of the best interest of the child . . ., among any other factors it finds relevant, consider all of the following:
     "(a) The health, safety, and welfare of the child.
     "(b) Any history of abuse by one parent . . . ."

14

S.Y.'s greatest concern seemed to be about Omar smoking in front of A.  Her counsel said that S.Y. was "mostly concerned about having [Omar's] sister supervise because of the prior incident of allowing smoking around the child."  The trial court ordered Omar not to smoke in A.'s presence, and Omar agreed never to do so.  S.Y. was also worried about having Omar's sister supervise Omar's visitation with A. because she had seen her use corporal punishment on her own children.  The court also ordered, and Omar agreed, to not use corporal punishment on A.  Notably, S.Y. did not mention any abuse of A. by Omar, except for the one incident after A. threw a bowl at his grandmother.  S.Y. would certainly have testified to any other abuse of A. by Omar if such abuse had occurred.

In addition to finding no risk of harm to A. while in Omar's custody, the trial court also relied on Omar's interactions with A., which were relevant to the rebuttal of the presumption of detriment.  The trial court stated, based on visitation reports, that, "[Omar] has been attentive and does understand who his son is, which is what I'm looking for."  A. was attached to his father and enjoyed spending time with him.  Substantial evidence supported this finding.  A professional visitation supervisor reported that A. was comfortable when S.Y. left and Omar appeared.  Omar's parenting style including teaching and structuring properly.  Omar played with A.  They laughed together.  In addition, Omar's sister submitted descriptions of A.'s interaction with Omar, reporting that Omar played with A., corrected him appropriately, read to him, taught him English, and cared for A. by feeding him and changing his diapers.  A. repeatedly said he wanted to play with his cousins from Omar's family.

15

In sum, without considering the statutory preference for frequent and continuing contact with both parents, the substantial evidence of Omar's demonstrated actions and relationship with A. rebutted the presumption that his custody would be detrimental to A.'s best interest.

### i. *Statutory Preference for Frequent and Continuing Contact with Both Parents*

The trial court stated that S.Y.'s withholding of A. from Omar for several months supported its finding that Omar had overcome the presumption of detriment to the best interest of the child. S.Y. claims that this reliance was improper because the trial court impermissibly relied on the preference for frequent and continuing contact with both parents. We disagree. The court did not mention the presumption for frequent and continuing contact with both parents as a basis for rebutting the presumption. The court's decision was grounded on the specific facts of this case, not on the general statutory preference for continuing contact.

The trial court could reasonably conclude that S.Y.'s withholding of A. from Omar was relevant to determining if awarding custody to Omar would be detrimental to A.'s best interest. S.Y.'s prevention of A. from having contact with his father reflected a lack of understanding of common general parenting best practices and A.'s best interest, as well as her inability to understand the orders of the court at the restraining order hearing.

Further, section 3044, subdivision (b)(1) did not prevent the court from considering A.'s need for a meaningful relationship with his father. (See *Keith R.*, *supra*, 174 Cal.App.4th at p. 1056 ["while Father may have lost his ability to cite [the statutory

16

preference in attempting to overcome the section 3044 presumption], Daughter certainly did not lose her right to have a meaningful relationship with both parents"].) A.'s interactions with Omar were positive. In this regard, S.Y.'s prevention of Omar from seeing A. for an extended period of time disrupted, and was damaging to, the good relationship between A. and Omar, which was important for A. as long as he was safe in Omar's presence. (*Id*. at p. 1057.) Although the court could not rely on the statutory preference for continuing contact with both parents, the facts describing the nature and quality of the child's relationship with his parents were relevant to determining the child's best interest and if the abusive parent had rebutted the presumption that his custody was detrimental to that interest. The *Keith R*. court stated that information relevant to the best interests of the child, in overcoming the section 3044 presumption, "includes evidence about the nature of Father's relationship with Daughter, his ability and willingness to care for her, the extent, if any, to which he poses a risk of physical and emotional abuse, his receptivity to being a 'friendly parent,' and Daughter's needs for more than marginalized parental relationships." (*Ibid*.) These considerations were relevant to the best interest of the child even when the court does not rely on the statutory preference for continuing contact with both parents. (*Id*. at pp. 1056–1057.)

S.Y. relies on *Ellis v. Lyons* (2016) 2 Cal.App.5th 404 (*Ellis*) to support her claim that the trial court improperly relied on the statutory preference for continuing contact to rebut the presumption of detriment. The trial court in *Ellis* explicitly relied on the section 3040 preference for continuing contact in denying the mother's request for sole legal and physical custody. (*Ellis*, *supra*, at p. 414.) But that was not the error that caused

17

reversal.  The error in *Ellis* was not that the trial court violated section 3044, subdivision (b)(1) by relying on the statutory preference for parental contact in determining whether the section 3044 presumption was rebutted; rather, the error was that the court failed to consider the presumption at all.  (*Id.* at pp. 416–417; see also *Celia S.*, *supra*, 3 Cal.App.5th at p. 664 [error was lack of any evidence rebutting § 3044 presumption].) *Ellis* does not support S.Y.'s claim of error because the trial court here explicitly considered and applied the section 3044 presumption in making its order and did not mention the section 3040 preference at any time.

ii.  *English Fluency*

In stating the bases for rebuttal of the presumption, the trial court said that Omar was more fluent in English than S.Y. and found his greater fluency to be an advantage for "navigation through the American medical and educational system."  It was error to use language fluency to rebut the presumption of detriment arising from domestic violence as it has no relation to A.'s safety or the impact of prior domestic violence on him.  The error does not require reversal or remand, however, because there was sufficient other evidence supporting the court's finding that Omar had rebutted the presumption of detriment with respect to both legal and physical custody.

A court abuses its discretion when it relies on a factor that is not relevant to the child's best interest when making a determination of custody, and when it applies improper criteria or makes incorrect legal assumptions.  (*Fajota*, *supra*, 230 Cal.App.4th at p. 1497.)  Abuses of discretion have been found when a court based a custody decision on the race of a custodial parent's second spouse (*Palmore v. Sidoti* (1984) 466 U.S. 429,

18

431, 434); on a presumption that a single working parent could not provide adequate care for a child (*Burchard v. Garay* (1986) 42 Cal.3d 531, 540); or on the relative economic position of parties (*Id.* at p. 541; *In re Marriage of Fingert* (1990) 221 Cal.App.3d 1575, 1581); on a physical disability (*In re Marriage of Carney* (1979) 24 Cal.3d 725, 728); on religious belief (*In re Marriage of Murga* (1980) 103 Cal.App.3d 498, 504–505); or on sexual orientation (*Nadler v. Superior Court* (1967) 255 Cal.App.2d 523, 525).

We expand this list by adding English fluency as an improper factor in considering a child's best interest in the absence of facts showing actual harm due to language. California has demonstrated in other contexts a public policy prohibiting decisions being made on the basis of language fluency when not relevant to the issue. (See Gov. Code, § 11135 [prohibiting discrimination based on "ethnic group identification," defined by regulation (Cal. Code Regs., tit. 2, § 11161, subd. (b)) to include linguistic characteristics]; Gov. Code, § 68560, subd. (e) ["The Legislature recognizes that the number of non-English-speaking persons in California is increasing, and recognizes the need to provide equal justice under the law to all California citizens and residents and to provide for their special needs in their relations with the judicial and administrative law system"].) Language fluency might be relevant when there has been a factual finding that lack of fluency is likely to or has resulted in detriment to the child's best interest. (See *Burchard v. Garay*, *supra*, 42 Cal.3d at p. 540 ["Any actual deficiency in care . . . would of course be a proper consideration in deciding custody."].) For example, detriment could be shown by a parent who repeatedly doses a child incorrectly with medications due to inability to read the directions. There was no such finding here.

19

We further note that the trial court was not motivated by discriminatory intent in this case,[9] which could, by itself, demonstrate an abuse of discretion. Consideration of language proficiency can be discriminatory, and thus improper, when it is used with the intent to discriminate based on race, ethnicity or national origin. (*Hernandez v. New York* (1991) 500 U.S. 352, 362, 371 (plur. opn., Kennedy, J.); see also in *Castro v. State of California* (1970) 2 Cal.3d 223, 231 [overturning statute requiring that citizens be literate in English to vote, in part because "fear and hatred played a significant role" in Legislature's enactment of requirement].)

The trial court abused its discretion because it used an improper factor in determining custody. (*Fajota*, *supra*, 230 Cal.App.4th at p. 1497.) Omar's greater English fluency was not relevant to the best interest of A., much less to his safety and to the domestic violence presumed detriment. In the particular circumstances of this case, however, we find that English fluency was not a primary factor in the trial court's determination that Omar had rebutted the presumption of detriment. The trial court mentioned Omar's fluency in the context of contact with doctors and educators, and S.Y. had no objection to or concerns about Omar's participation in A.'s health care. S.Y. was not deprived of custody due to her language.

---

9    English fluency was not a proxy for discrimination based on national origin here because Omar and S.Y. were both natives of Middle Eastern countries — Omar from Jordan and S.Y. from Iraq — who had immigrated to the United States. The trial judge never mentioned immigration status, except to say that she came from an immigrant family herself. The court's comment on English was directed only to communications with education and health care providers. S.Y. was not restricted from using her native language inside or outside her home.

We find no miscarriage of justice in this case despite the trial court's error. Substantial evidence supported the court's finding that Omar rebutted the presumption of detriment even without consideration of language. The primary factors for rebutting the presumption arising from domestic abuse are the health, safety, and welfare of the child. (§ 3020, subd. (c).) The best interest of the child is always the overriding goal. (*Keith R.*, *supra*, 174 Cal.App.4th at pp. 1054–1055; § 3044, subd. (b)(1).) Substantial evidence showed no risk to A.'s safety in Omar's custody; Omar was attentive to and acted appropriately with A., including correcting A.'s behavior with reason rather than violence; and there was no continuing violence after S.Y. moved out. Presumably the trial court monitored Omar's completion of a parenting class and batterer's treatment program at the status conference set for April 4, 2018, and would be informed if Omar had committed any other acts of domestic violence.

The record shows a reasonable basis for the court's determination that Omar rebutted the domestic violence presumption. (See *Fajota*, *supra*, 230 Cal.App.4th at p. 1497.) The court's error in using language fluency as a factor was harmless.

b. *Batterer's Treatment Program and Parenting Class*

When the trial court is determining whether a perpetrator of domestic violence has rebutted the presumption that his custody would be detrimental to the best interest of a child, subdivisions (b)(2) and (b)(4) of section 3044 require the court to consider whether the perpetrator has successfully completed a batterer's treatment program and a parenting class if the court determines the latter class to be appropriate. (§ 3044, subds. (b)(2), (b)(4).) The trial court was concerned about Omar's perpetration of violence on S.Y. and

ordered him to complete 12 weeks of a domestic violence treatment program. He had never been ordered to attend such a program before. The FCS counselor did not recommend such a class for him. The trial court did not condition custody on Omar's completion of the domestic violence class.[10] The FCS counselor had recommended that both parents take a six-week parenting class and a co-parenting class. As of October 2017, Omar had completed seven weeks of a 14-week parenting course. The court complimented Omar for taking the parenting class and for having a willingness to learn. The trial court ordered him to complete the parenting class, but again did not require completion as a condition of custody.

There was no physical abuse by Omar against either S.Y. or A. after August 2016. S.Y.'s moving out of the house ended Omar's physical abuse of her and protected A. from witnessing domestic violence by his father. The visitation reports showed that Omar parented A. appropriately by playing with him, correcting him without abuse, and caring for his physical and developmental needs. The trial court found that the batterer's treatment program and parenting classes were helpful and appropriate for Omar, but not critically needed before Omar could rebut the presumption that his custody would be detrimental to A.'s best interest.

S.Y. and amici CWL contend that the factors listed in subdivision (b) are mandatory and require the completion of the parenting classes and batterers' treatment

_____

10    A follow-up status conference was set for April 4, 2018, but we do not know the results of that conference. The minute order setting the conference, filed in October 2017, stated that the next conference was on April 4, 2017, but that was clearly a typographical error in the date.

22

program to rebut the presumption of section 3044. They emphasize the word "shall," which connotes mandatory action, but ignore the verb "consider" that follows "shall." (§ 3044, subd. (b).) To consider is not to require. (*Jason P.*, *supra*, 9 Cal.App.5th at p. 1032, fn. 23.) Completion of those programs is not mandatory to rebut the presumption of detriment. (*Id.* at pp. 1017–1018, 1028; *Jaime G.*, *supra*, 25 Cal.App.5th at p. 807 [characterizing completion of specified programs as a "statutory suggestion"].) A trial court could reasonably conclude that completion of a batterer's treatment program was not necessary to rebut the presumption. (*Jason P.*, at p. 1028.) The trial court in *Jason P.* ordered that the father's successful completion of individual counseling and joint counseling with the mother — not a batterer's treatment program — would be sufficient to rebut the presumption. (*Id.* at pp. 1017–1018.) The court then violated its own order by awarding joint custody to the father before he completed the court's requirement. (*Id.* at p. 1029.) No batterer's treatment program was required, and the completion of counseling was necessary only because the trial court found it was necessary to rebut the presumption of detriment. (*Id.* at pp. 1017–1018, 1028–1029.)

Similarly, the appellate court in *Jaime G.* recognized that it might be appropriate not to require the batterer's treatment program for a domestic violence perpetrator. The court said that "[s]ound logic may support a deliberate and thoughtful choice" not to impose a batterer's course. (*Jaime G.*, *supra*, 25 Cal.App.5th at p. 807.) The *Jaime G.* court found that the trial court erred because its statement of decision did not include its reasons for failing to impose this condition, thwarting meaningful appellate review. (*Id.* at p. 809.)

S.Y. and CWL also cite *Celia S.* and *Ellis*, but in both of those cases the error was in failing to consider the section 3044 presumption at all. (*Celia S.*, *supra*, 3 Cal.App.5th at p. 655; *Ellis*, *supra*, 2 Cal.App.5th at pp. 416–417.) S.Y. also cited *People v. Cates* (2009) 170 Cal.App.4th 545, 548, which held that Penal Code section 1203.097 required imposition of a batterer's program as a mandatory condition of probation for a defendant convicted of domestic violence. (*Cates*, at pp. 548, 550.) It had nothing to do with child custody or the presumption at issue here.

None of these cases change the clear and unambiguous language of the statute — that the court must *consider* seven factors, with no requirement of full satisfaction of each factor. (§ 3044, subd. (b); *Jason P.*, *supra*, 9 Cal.App.5th at p. 1032, fn. 23.) S.Y. requested that we take judicial notice of documents including legislative history material of section 3044. We granted her request. S.Y. points to two sentences from section 3044's legislative history supporting her claim that completion of a batterer's treatment program was required before custody could be awarded.[11] Those two sentences are not persuasive in light of the clear language of the statute. The words of a statute " 'generally

---

[11] S.Y. relies on the following two comments out of the 35 pages of material of which she requested judicial notice: (1) Section 3044 "require[s] the perpetrator to show that he or she has undertaken specific actions to deal with the situation before custody is awarded to the parent." (Assem. Republican Caucus, analysis of Assembly Bill No. 840 (1999 – 2000 Reg. Sess.), p. 2 [Arguments in Support of the Bill, No. 3].); and (2) Section 3044 requires "proof of rehabilitation" to overcome the presumption against joint custody in order to "increase the probability that a domestic violence perpetrator will be a safe custodial parent." (Enrolled Bill Report dated September 1, 1999 from the Health and Human Services Agency, Enrolled Bill Rep. on Assem. Bill No. 840 (1999 – 2000 Reg. Sess.) Sept. 1, 1999, p. 1 [Recommendation and Supporting Arguments].)

provide the most reliable indicator of legislative intent.' " (*Pineda v. Williams-Sonoma* (2011) 51 Cal.4th 525, 529 (*Pineda*).)  We do not review legislative history unless the language of a statute is ambiguous.  " 'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.' "  (*Id*. at p. 530; *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 29.)  Neither section 3044 nor case law require completion of a batterer's treatment program or parenting classes to rebut the presumption of detriment.

S.Y. and CWL also assert that section 3044, subdivision (b)(2) requires a 52- week treatment program.  It does not.  Section 3044, subdivision (b)(2) requires a treatment program that meets the criteria of subdivision (c) of section 1203.097.  Batterer's programs meet the criteria of subdivision (c) if they are open only to persons with a written referral from the court or probation department stating the number of minimum sessions required by the court.  (§ 1203.097, subd. (c)(1)(N).)  Fifty-two-week classes are required only for defendants on probation for a domestic violence crime.  A mandatory condition of probation for domestic violence perpetrators is "[s]uccessful completion of a batterer's program, as defined in subdivision (c) . . . for a period not less than one year." (Pen. Code, § 1203.097, subd. (a)(6).)  Omar was ordered to attend a batterer's program by the family court.  The court stated that Omar had to complete a minimum of 12 sessions of the program.  He was not on criminal probation and he did not have to attend a year's worth of sessions.

CWL argues that the appellate courts "consistently misapply the presumption in domestic violence cases," because they do not require that the batterer's treatment program and parenting class be completed. But it is the courts that provide guidance in interpreting statutes through application of the statute in specific cases. (*American Coatings Assn. v. South Coast Air Quality Management Dist.* (2012) 54 Cal.4th 446, 462 ["[T]he proper interpretation of a statute is ultimately the court's responsibility."].) We follow the guidance of the courts and the clear language of the statute in finding no requirement that a batterer's treatment program and parenting classes must be completed in every case in order to rebut the presumption of detriment.

In sum, a trial court must consider completion of a batterer's treatment program and parenting classes when determining if the section 3044 presumption has been rebutted, but neither attendance at nor completion of those two classes are required by the statute. The trial court found that Omar had rebutted the presumption of detriment even without completion of those classes. Omar's current active, age-appropriate interactions with A. were far more relevant than completion of classes in determining if awarding joint custody to Omar would be detrimental to A.'s best interest. The trial court did not abuse its discretion in finding that Omar had rebutted the presumption of detriment with respect to parenting classes and batterer's treatment program. (*Fajota*, *supra*, 230 Cal.App.4th at p. 1497 [standard is abuse of discretion]; *Heidi S.*, *supra*, 1 Cal.App.5th at p. 1163 [reversal warranted only if court's decision was arbitrary or capricious].)

c. *Consideration of Additional Acts of Domestic Violence by Omar*

The trial court must consider whether the perpetrator of domestic violence has committed any further acts of domestic violence under section 3044, subdivision (b)(7). The trial court found that Omar perpetrated domestic violence against S.Y. on August 29, 2016. S.Y. testified to other prior acts of violence, but the trial court made no finding of domestic violence other than the hitting and choking on August 29, 2016. No physical violence was reported after S.Y. moved out of the house.

S.Y. and CWL discuss extensively the detriment to a child who lives in a household where domestic violence occurs. We do not disagree. But citations to general studies are not helpful or relevant to our review of the primary issues here — A.'s current safety in the custody of Omar and A.'s best interest. A. no longer lived in a household where domestic violence occurred and he was not a witness to continuing violence.

S.Y. asserts that Omar continued to harass or threaten her, a form of domestic violence. The incidents she cites, however, do not seem to rise to domestic violence as defined in section 3044, subdivision (c),[12] which includes threatening or harassing for which a court may issue an ex parte order to protect the safety of family members. A

---

[12] "For purposes of this section, a person has 'perpetrated domestic violence' when he or she is found by the court to have intentionally or recklessly caused or attempted to cause bodily injury, or sexual assault, or to have placed a person in reasonable apprehension of imminent serious bodily injury to that person or to another, or to have engaged in any behavior involving, but not limited to, threatening, striking, harassing, destroying personal property or disturbing the peace of another, *for which a court may issue an ex parte order* pursuant to Section 6320 to protect the other party seeking custody of the child or to protect the child and the child's siblings." (§ 3044, subd. (c), emphasis added.)

27

court would not likely issue a restraining order based on the evidence S.Y. presented. S.Y. alleges that Omar threatened to sue her for enrolling A. in preschool, and that, in the words of her attorney, he used the court order as a "weapon" to control S.Y. In the incident supporting the latter allegation, according to S.Y.'s attorney, Omar told S.Y. that he was keeping A. for an additional five hours the next day to make up for time missed when A. was on vacation with S.Y., and Omar refused to transport A. to S.Y.'s, claiming his actions were in accordance with the trial court's order. The trial court chastised the parties for their continued lack of cooperation but did not find additional domestic violence. In any event, A. was not privy to those communications between S.Y. and Omar. (Cf. *Rybolt v. Riley* (2018) 20 Cal.App.5th 864, 870–871, 878 [father continued to harass mother in child's presence, causing stress to child].) S.Y. and the ACLU also discuss a batterer's ability to control a victim with limited English ability. But S.Y. now lives apart from Omar and is attending English classes. The threats and harassment that S.Y. alleged were not in the presence of A. and did not put his health, safety, and welfare at risk.

4. *Other Statutory Factors*

The other statutory factors were not at issue here. There was no suggestion of drug or alcohol abuse (§ 3044, subd. (b)(3)); Omar was not and never had been on probation or parole (§ 3044, subd. (b)(4)); and Omar was not restrained by a protective or restraining order (§ 3044, subd. (b)(6)).

28

5. *The Trial Court's Order Was Adequate Because It Stated the Reasons*

*Supporting its Decision*

S.Y. criticizes the court's statement of decision because the court did not state its reasons about each factor on the record. The statement of decision was sufficient because it set forth the court's reasons with sufficient clarity to permit meaningful appellate review.

Where the court has considered domestic violence in a child custody case, it must state the reasons for its ruling in writing or on the record. (§ 3011, subd. (e)(1).)[13] This does not require the trial court to specifically discuss each of the seven factors listed in section 3044, subdivision (b). "Nothing in Family Code section 3011 defines what the court's statement of reasons must contain except that it include the court's reasons for the custody award in light of allegations of . . . abuse." (*A.G. v. C.S.* (2016) 246 Cal.App.4th 1269, 1284–1285.) The purpose of the statement of reasons is to permit meaningful review by the appellate court. (*Williams*, *supra*, 88 Cal.App.4th at p. 815; but see *Jaime G.*, *supra*, 25 Cal.App.5th at pp. 806–807.) The court in *Jaime G.* recently held that section 3011, subdivision (e)(1), requires the trial court to specifically mention each of the seven factors of section 3044. (See *Jaime G.*, at pp. 805–807, 809.) But the plain and ordinary language of sections 3011 and 3044 do not require a step-by-step discussion of each of the statutory factors, some of which may not be applicable. (See *Pineda*, *supra*,

---

13     Section 3011, subdivision (e)(1) states: "Where allegations about a parent [of a history of abuse or substance abuse] have been brought to the attention of the court in the current proceeding, and the court makes an order for sole or joint custody to that parent, the court shall state its reasons in writing or on the record."

51 Cal.4th at pp. 529–530 [plain words of a statute govern unless language is ambiguous].) The *Jaime G.* court purported to rely on statutory construction of section 3011, subdivision (e)(1) even though its language is clear. The *Jaime G.* court cited no legislative history except for a Judiciary Committee Analysis that stated only "[t]he purpose of the rebuttable presumption statute is to move family courts, in making custody determinations, to consider properly and to give heavier weight to the existence of domestic violence." (*Id.* at p. 805.) Otherwise, *Jaime G.* relied on multiple sources other than case law and legislative history. (*Id.* at pp. 805–807.) We follow the plain words of the statute that the court must give a statement of reasons without requiring a decision on each of the seven enumerated factors. (*Pineda*, *supra*, 51 Cal.4th at pp. 529–530.) Judicial gloss adds the requirement that the court's statement be sufficient for meaningful review. (*Williams*, *supra*, 88 Cal.App.4th at p. 815.) We are able to meaningfully review the court's statement of decision here. Discussion of each of the statutory factors is not mandated.

This trial court's statement of decision is sufficient for meaningful review, particularly in light of the evidence at trial and the extensive information submitted to the court. Substantial evidence supported the trial court's finding that despite continuing animosity between S.Y. and Omar, A. had a close, appropriate relationship with Omar.

6. *No Cumulative Error*

We find that the trial court's error in relying on English fluency to rebut the domestic violence presumption was not sufficient by itself to find an abuse of discretion,

and the court did not otherwise err.  S.Y. has never shown any risk of harm to A. in Omar's custody.  We find no cumulative error in the court's exercise of its discretion.

7.  *Overall, the Trial Court Did Not Abuse its Discretion in Finding That Omar Had Rebutted the Presumption of Detriment to A.'s Best Interest*

The trial court understood and explicitly applied the presumption created by section 3044.  The purpose of the section 3044 presumption is to protect the health, safety, and welfare of the child, not to punish the child and/or perpetrator for past crimes. (*LaMusga*, *supra*, 32 Cal.4th at p. 1094.)  Substantial evidence supports the court's findings that A. was not at risk in Omar's custody and that the section 3044 presumption of detriment had been rebutted.  We find that despite the court's error in relying on English fluency, the trial court did not otherwise abuse its discretion in awarding joint physical and legal custody to Omar.  (*Fajota*, *supra*, 230 Cal.App.4th at p. 1497; *Heidi S.*, *supra*, 1 Cal.App.5th at p. 1163.)

## DISPOSITION

The petition is denied.  Each party shall bear its own costs.


                                                                 BENKE, Acting P. J.

WE CONCUR:



IRION, J.



DATO, J.