Filed 10/16/19; Certified for Publication 11/8/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| In re Marriage of SCOTT E. McKEAN and TANYA McKEAN. | |
|---|---|
| SCOTT E. McKEAN, Appellant, v. TANYA McKEAN, Respondent. | G055601 (Super. Ct. No. 09D004987) O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Lon F. Hurwitz, Judge.  Reversed.

Masson & Fatini, Richard E. Masson, Susan M. Masson, for Appellant.

Scott E. McKean, in pro. per.; and J. Michael Jacob for Respondent.

Tanya McKean appeals from the trial court's order granting sole legal and physical custody of her two younger children in favor of their father, Scott McKean. Tanya[1] claims the court abused its discretion by modifying the parties' custody order absent sufficient evidence of changed circumstances. Specifically, Tanya asserts the court erred when it determined that by granting her sole legal and physical custody of her severely disabled daughter, she was rendered incapable of maintaining joint legal and physical custody of her two younger children. We agree with Tanya, reverse the court's order, and remand the matter for proceedings consistent with this opinion.

FACTS

We incorporate from our prior opinion the following summary of the underlying facts: "In June 2009, Scott filed a petition for dissolution of his 12-year marriage to Tanya. In 2004, Tanya and the couple's three young children were in a horrible car accident when another driver ran a red light. Their oldest daughter, Cheyenne, was killed. Their daughter Si. suffered massive head injuries and was left with permanent major brain damage that necessitates constant medical attention and therapy. The couple had another daughter, Sa., and their son, W., was born in March 2006. In the legal action following the car accident, Si. received a settlement that provides $20,000 a month for her treatment, therapy, and caregivers. Tanya received a settlement of $2.4 million, and Scott received a settlement of $1.2 million. [¶] Sadly, the accident did more than take the life of one child and devastate the life of another—it left in its wake the eventual destruction of Scott and Tanya's marriage. The record is replete with accusations and recriminations leveled by each demonstrating the parties are utterly unable to agree on even the smallest of matters when it comes to Si.'s care, and to the parenting and custody of the children." (*In re Marriage of McKean* (Apr. 27, 2012, G045511) [nonpub. opn.].)

_____

[1] We refer to the parties by the first names for clarity and intend no disrespect. (*In re Marriage of Witherspoon* (2007) 155 Cal.App.4th 963, 967, fn. 2.)

2

The parties have been engaged in litigation for more than a decade. There have been numerous orders made, challenged, and modified with regard to custody and visitation issues. As pertinent to this appeal, in 2015 the trial court issued a custody order (2015 order). The 2015 order granted Tanya sole legal custody of Si., but granted Tanya and Scott joint physical custody of Si. It further granted joint legal and physical custody of Sa. and W. The court noted "there seems to be a bond with all three (3) minor children, and the court thinks it should be equal time with [Scott] and [Tanya]."

In 2016, Tanya filed an application and request for order seeking modification of the time share for all of the children (2016 request). Specifically, Tanya sought sole physical custody of S., reasonable visitation with Si. for Scott, and visits with Sa. and W. for Scott on alternate weekends and a mid-week dinner visit. Scott's response to Tanya's 2016 request (2016 response) sought to maintain the current physical custody order as to all three children, maintain the current legal custody order as to Sa. and W., and award Scott sole legal custody of Si. or in the alternative appoint a medical guardian to make decisions as to Si.'s healthcare. Neither party sought to change the 2015 order as to the legal or physical custody of Sa. and W.

After trial, the court issued its findings and order after hearing (2017 order). It awarded custody as follows: sole legal and physical custody of Si. to Tanya; sole legal and physical custody of Sa. and W. to Scott; visitation with Si. by Scott, as arranged between the parties in writing; and visitation with Sa. and/or W. by Tanya, as arranged between the parties in writing.

In support of its decision to grant Tanya sole legal and physical custody of Si., the trial court found that "[t]he parties cannot co-parent." It further determined "parallel parenting" was not possible given Si.'s medical needs, and the parties' inability to communicate was "terribly deleterious to the best interest of [Si.]"

The trial court identified three primary factors in support of its decision to grant Scott sole legal and physical custody of Sa. and W. First, the court concluded

3

granting Tanya sole legal and physical custody of Si. rendered her incapable of being "sole custodial or even joint custodial of [Sa.] and [W.] when she is the sole custodial . . . of [Si.]" It explained, "The [c]ourt finds the notion of [Tanya] being sole custodial or even joint custodial of [Sa.] and [W.] when she is the sole custodial or if she is the sole custodian of [Si.] is a real problem. That is not going to work." In support of this, the court identified one specific event, where Tanya left Sa.'s dance team workshop in Las Vegas early when Si. suffered a seizure while under Scott's care. "At the first sign that [Si.] may have a problem [Tanya] abandons [Sa.], and the [c]ourt can come up with no other word but abandonment." The court determined this isolated event mandated that Tanya could not serve as joint custodian of Sa. and W., while sole custodian of Si. Testimony about the incident demonstrated Tanya left Sa. in the care of her trusted dance teacher to ensure she would not miss the rest of the workshop.

Second, the trial court found Si.'s extraordinary emotional, medical, and educational needs created compelling circumstances requiring the court to separate the siblings in terms of custody and visitation. Third, the court negated any bond between the children on the grounds that "bonding runs two ways," and Si.'s handicap rendered her incapable of recognizing Sa. and W., and incapable of providing Sa. and W. with any emotional support. The court expressed concern that any such "bonding" would simply be the result of Sa. and W.'s parentification, i.e., the requirement they "parent" Si. while in Tanya's care.

The trial court acknowledged neither party supported or requested separating the three children. It further stated the "orders are harsh" and "not optimum for all of the children . . . [b]ut, in this situation the court must look to what is least deleterious for the children."

4

DISCUSSION

Tanya appeals from the 2017 order granting Scott sole legal and physical custody of Sa. and W.[2]  She contends the 2017 order constituted an abuse of discretion because it was unsupported by evidence of changed circumstances.  We agree.  The 2017 order must be reversed and remanded.

Family Code section 3087[3] allows a parent to request modification of a joint custody order.  "An order for joint custody may be modified . . . if it is shown that the best interest of the child requires modification  . . .  of the order."  (§ 3087.)  "California's statutory scheme governing child custody and visitation determinations is set forth in the Family Code . . . . Under this scheme, 'the overarching concern is the best interest of the child.'  [Citation.]  [¶]  For purposes of an initial custody determination, section 3040, subdivision (b), affords the trial court and the family '"the widest discretion to choose a parenting plan that is in the best interest of the child."'  [Citation.]  When the parents are unable to agree on a custody arrangement, the court must determine the best interest of the child by setting the matter for an adversarial hearing and considering all relevant factors, including the child's health, safety, and welfare, any history of abuse by one parent against any child or the other parent, and the nature and amount of the child's contact with the parents.  [Citations.]  [¶]  Once the trial court has entered a final or permanent custody order reflecting that a particular custodial arrangement is in the best interest of the child, 'the paramount need for continuity and stability in custody arrangements—and the harm that may result from disruption of established patterns of

---

[2]     Tanya concedes Si.'s custody is not at issue on appeal because she turned 18 years old during the pendency of this appeal and is no longer under the jurisdiction of the family law division of the trial court.  (*In re Marriage of Jensen* (2003) 114 Cal.App.4th 587, 595.)  We infer from the record and the parties' briefing Si. continues to reside with Tanya.

[3]     All further statutory references are to the Family Code.

5

care and emotional bonds with the primary caretaker—weigh heavily in favor of maintaining' that custody arrangement.  [Citation.]  In recognition of this policy concern, we have articulated a variation on the best interest standard, known as the changed circumstance rule, that the trial court must apply when a parent seeks modification of a final judicial custody determination.  [Citations.]  Under the changed circumstance rule, custody modification is appropriate only if the parent seeking modification demonstrates 'a significant change of circumstances' indicating that a different custody arrangement would be in the child's best interest.  [Citation.]  Not only does this serve to protect the weighty interest in stable custody arrangements, but it also fosters judicial economy.  [Citation.]" (*In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 955-956.)

"The changed-circumstance rule . . . provides, in essence, that once it has been established that a particular custodial arrangement is in the best interests of the child, the court need not reexamine that question.  Instead, it should preserve the established mode of custody unless some significant change in circumstances indicates that a different arrangement would be in the child's best interest[s]." (*F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 15.)  We review a custody order for abuse of discretion.  (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32.)  "This discretion may be abused by applying improper criteria or by making incorrect legal assumptions." [Citation.] (*Jane J. v. Superior Court* (2015) 237 Cal.App.4th 894, 901.)

In order to demonstrate a change in circumstances warranting modification of a final custody order, the moving party bears the burden of persuasion to show how the circumstances have changed and why the modification is in the children's best interests. (*Burchard v. Garay* (1986) 42 Cal.3d 531, 536-537.)  The moving party must make a "'threshold showing of detriment'" before an existing final custody order may be modified in the children's best interest. (*Christina L. v. Chauncey B*. (2014) 229 Cal.App.4th 731, 738.)  The court's decision must be based on the standards governing all custody determinations. (§§ 3011, 3020, 3040.)  For the children's best interests, the

6

primary concerns are the children's health, safety, and welfare. (*Ibid.*) Furthermore, so long as consistent with the children's best interest, the preference is for "frequent and continuing contact" with both parents. (*Ibid.*)

The crux of the custody battle in this tragic case was the legal and physical custody of Si. However, Si.'s custody is not the subject of this appeal. Curiously, while neither party requested a custody modification as to Sa. and W., the trial court sua sponte awarded sole legal and physical custody of the pair to Scott. The court explained by granting Tanya sole legal and physical custody of Si., Tanya was incapable of being "sole custodial or even joint custodial of [Sa.] and [W.] when she is the . . . sole custodian of [Si.]" In support of its decision, the court cited to one specific event when Tanya returned early from Sa.'s dance workshop in Las Vegas when Si. suffered a seizure while in Scott's care.

The trial court, without legal or evidentiary support, referred to the event as "abandonment" of Sa. It apparently equated the event as posing a detriment to Sa. sufficient to warrant a modification of the 2015 order. We sympathize with Tanya's difficult choice of staying with Sa. or returning home to check on Si.'s serious medical condition. Contrary to the court's description of the event, however, it appears Tanya did everything a parent could be expected to do under the circumstances. Tanya did not simply leave Sa. behind, or even make her miss her workshop. Instead, Tanya arranged for Sa. to be cared for and brought home by her trusted dance instructor. This isolated incident lends no support for the court's conclusion Tanya is unable to maintain custody of Sa. and W. while she is the sole custodian of Si. There was no threshold showing of detriment warranting a modification. This is not surprising because there was no moving party—neither side requested a modification as to the custody of Sa. and W.

Contrary to the trial court's finding of detriment warranting modification, the record is replete with Tanya's commendable achievements as a mother to all three children. The evidence at trial demonstrated Tanya appropriately, and indeed admirably,

balanced time constraints posed by Si.'s severe disabilities with the needs of her able bodied younger children. Tanya does not attempt to provide Si.'s required 24-hour care. She hired two to three nurses to assist with caring for Si. and her medical needs. This assistance with Si. allows Tanya to be involved with Sa. and W. It was undisputed that Sa. and W. are healthy, happy, and well-adjusted children. Testimony showed Tanya spends "alone time" with Sa. and W. and she tries to find time for each of the children for a "one-on-one" every single day. Tanya participated at school with all three children, and was room mom every year for the children in elementary school. She has taken all children on family trips and sleep overs with friends. She attended baseball games for W., dance classes and recitals for Sa., took Sa. shopping, hosted Cub Scout activities for W., and more. Tanya ensured the younger children participated in family activities and spent time with their friends. Scott did not argue otherwise.

Nothing in the record demonstrates the trial court weighed Sa.'s and W.'s interests in the stability of their current custodial arrangement. The court did not address the potential harm to Sa. and W. from losing Tanya as a custodial parent. The court lacked any evidence Tanya's care for Si. and her serious medical needs resulted in deficient care of Sa. and W.

Tanya also contends the trial court erred because it failed to properly consider the siblings' bond before separating the children. We agree.[4]

We recognize California public policy that "the sibling bond should be preserved whenever possible." (*In re Marriage of Heath* (2004) 122 Cal.App.4th 444, 449-450 (*Marriage of Heath*).) Absent evidence of compelling circumstances, including extraordinary emotional, medical or educational needs, an order separating siblings

---

[4] While Si. is now over 18 years old, at the time of trial she was a minor. Evidence demonstrated Si.'s mental capacity is akin to that of a one-year-old to 18-month-old child. She will likely remain under Tanya's care as an adult. So Si., while technically an adult, functions more like a younger sibling to Sa. and W. Therefore, we consider the trial court's bonding analysis despite Si.'s age.

8

between custodial households ordinarily will be reversed as detrimental to the children's best interest. (*Marriage of Williams* (2001) 88 Cal.App.4th 808, 814-815 (*Williams*).) The trial court must consider the children's interest in having a meaningful opportunity to share each other's lives and the potential detriment to them from being separated. (*Marriage of Heath*, *supra*, 122 Cal.App.4th at pp. 449-450.)

"'Children are not community property to be divided equally for the benefit of their parents. . . . At a minimum, children have a right to the society and companionship of their siblings.'" (*Marriage of Heath*, *supra*, 122 Cal.App.4th at p. 449.) Furthermore, a developmental disability is not a per se compelling circumstance warranting separation. "[T]he bond between siblings should not be severed without a careful analysis of the actual impact of one child's condition on the other, as well as the impact of separation on both children." (*Id.* at pp. 450-451.)

The trial court determined Si.'s medical condition was evidence of compelling circumstances warranting separation of the siblings. It ignored established precedent that a disability is not automatically evidence of compelling circumstances. The court determined because Si. could not recognize her siblings as such, the sibling bond was inapplicable. It further expressed concerns about the "parentification" of Sa. and W. However, the evidence did not support these concerns. To the contrary, Si.'s neurologist testified she has the cognitive ability to appreciate her social surroundings, recognize her parents, and the ability to feel emotions such as fear and happiness. Ample testimony supported the children's bond with one another. The evidence also showed both Sa. and W. do funny things for Si. just to make her laugh. Similarly, there was no evidence presented as to the "parentification" of Sa. and W. No custody evaluation was ordered. The 2017 order instead appeared to be supported by the court's speculation about the dynamics between the siblings. This was insufficient.

In *Marriage of Heath*, the father in a dissolution proceeding sought to separate custody of the couple's two sons. (*Marriage of Heath*, *supra*, 122 Cal.App.4th

9

at p. 448.) One son had autism and the other mimicked his brother's behavior. (*Id.* at pp. 447-448.) The trial court ordered the sons separated, even though the record was silent as to the relationship between the children, the true impact, if any, of one brother's autism on the other, and the impact of losing the sibling bond. (*Ibid.*) "No testimony was taken, no custody evaluation was ordered [citation], no expert analysis was undertaken. Instead, the court relied on speculation by the father and children's counsel, and the court's 'hunch.' The law, however, requires proof of compelling circumstances, based on evidence that the family law court can evaluate and this court can review. [Citation.] Speculation by lawyers, conflicting argument on behalf of parents, and 'hunches' of judges do not suffice. Even on the deferential abuse of discretion standard, this order cannot be affirmed." (*Id.* at p. 450.)

Similar to *Marriage of Heath*, the record is devoid of any negative impact on Sa. and W. caused by Si. and her medical conditions. Instead, there are numerous references to the strong bond between the three children. Contrary to the trial court's comments, there was no evidence Si. could not participate in a sibling relationship. Admittedly, such a relationship would not function as a "traditional" older sister with her younger siblings, but that is not, and should not, be the test. The court is not to judge a familial relationship based upon a preconceived notion of what a "normal" sibling relationship looks like. Testimony demonstrated the siblings had mutual bonds and Si.'s cognitive state was akin to that of a one-year-old to 18-month-old child. Children of that age indeed have relationships with their families, and dismissing the impact of separating the siblings based purely on Si.'s disability was error. Furthermore, there was insufficient evidence of the supposed "parentification" of Sa. and W. Given the court's failure to apply the proper legal standards and its application of assumptions unsupported by the evidence, we reverse the 2017 order.

DISPOSITION

The trial court's 2017 order granting sole legal and physical custody of Sa. and W. to Scott is reversed.  The 2015 order is reinstated as it pertains to Sa.'s and W.'s custody, without prejudice to either party seeking modification of the 2015 order based upon any changed circumstances that may have arisen during the pendency of this appeal. Tanya shall recover her costs on appeal.


O'LEARY, P. J.

WE CONCUR:


FYBEL, J.


IKOLA, J.

11

Filed 11/8/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
FOURTH APPELLATE DISTRICT
DIVISION THREE

| | |
|---|---|
| In re Marriage of SCOTT E. McKEAN and TANYA McKEAN. | |
| SCOTT E. McKEAN, Appellant, v. TANYA McKEAN, Respondent. | G055601 (Super. Ct. No. 09D004987) ORDER GRANTING REQUEST FOR PUBLICATION |

The Association of Certified Family Law Specialists has requested that our opinion filed October 16, 2019, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c)(4), (c)(6), and (c)(7). The request is GRANTED.

The opinion is ordered published in the Official Reports.

O'LEARY, P. J.

I CONCUR:

IKOLA, J.